UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| KAZENERCOM TOO, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 08-1339 (ESH) |
| ) | |
| TURAN PETROLEUM, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiffs are individuals and organizations that reside or are based in Kazakhstan and have brought suit for fraud, breach of contract, and a host of other federal and common law claims arising from the sale of an oil concession in Kazakhstan. All but one of the defendants are residents of the Los Angeles area or Kazakhstan,[1] and the relevant events occurred either in California or Kazakhstan. Nonetheless, plaintiffs have chosen to file suit in the District of Columbia even though *no* party resides here, and the District of Columbia has *no* meaningful ties to this action. The Court will therefore transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404(a).

## BACKGROUND

**I.    PROCEDURAL BACKGROUND**

This case began on August 4, 2008, with the filing of a forty-nine page complaint, including exhibits, that alleges twelve causes of action, two of which are based on federal

---

[1] One defendant (Ibar Ventures LLC) was organized under the laws of Delaware and is not alleged to maintain an office in California. (Am. Compl. ¶ 12.)

statutes -- RICO, 18 U.S.C. § 1961 *et seq.*, and the securities laws, 15 U.S.C. § 77a *et seq.* This rambling complaint has been aptly characterized in Defendant Vanetik's motion as "so bewildering and incoherent as to render a reasonable interpretation all but futile." (Vanetik's Mot. at 4.) In response, two separate motions to dismiss have been filed. First, seven defendants (hereinafter "the Seven Defendants")[2] have moved to dismiss based on Fed. R. Civ. P. 12(b)(1),(2),(3),(5) and (6), or in the alternative, they move to transfer pursuant to 28 U.S.C. § 1404(a), § 1406(a), or § 1631, and to strike certain allegations under Rule 12(f)(2). Defendant Vanetik has also moved to dismiss under Fed. R. Civ. P. 12(b)(2) and (3), or in the alternative, for transfer under 28 U.S.C. § 1404(a) or § 1406(a).[3] In response to these motions, plaintiffs have inundated the Court with a series of filings seeking to have it take judicial notice of proceedings in other courts (Dkt. # 28), information on Turan's website (Dkt. # 30) and the circumstances of the attempted murder of Plaintiff Yerkin Bektayev in Almaty, Kazakhstan on October 31, 2008 (Dkt. #38). Plaintiffs have also asked the Court to order the taking of the deposition of Defendant Askar Karabayev (Dkt. #40), because Bektayev "suspect[s] Karabayev as an organizer of that murder [attempt]." (Plaintiffs' Amended Motion to File a Report, Inform the Court, to Submit Unredacted Exhibit, under Seal, and for Order of Expedited Deposition of Defendant Askar Karabayev at 3, filed Nov. 10, 2008.) Given plaintiffs' persistent filing of extraneous pleadings and irrelevant arguments, the Court had to take the unusual step of issuing an order denying plaintiffs' motions for the Court to take judicial notice and admonishing

---

[2] Turan Petroleum, Inc.; Ibar Development, Inc.; Ibar Ventures, LLC; Askar Karabayev; Timur Koichumanov; Alex Striganov; and Naum Voloshin.

[3] Two other defendants -- Alexander Kushnerenko and Trek Resources, Inc. -- were served and the Clerk's Office entered defaults against them on September 8, 2008.

counsel for both sides to be civil and to comply with the governing rules of procedure.  (*See* Order issued on Sept. 18, 2008.)

Ultimately the motion filed by the Seven Defendants became ripe on October 20, 2008 (Dkt. #37), and Defendant Vanetik's motion became ripe on December 9, 2008 (Dkt. #48).  Thereafter, after having had a full opportunity to review all of defendants' pleadings and arguments, plaintiffs filed their Verified First Amended Complaint on December 10, 2008 (Dkt. # 50).  This amended complaint, including exhibits, spans a hundred pages but does little, if anything, to clarify the confusing nature of plaintiffs' claims.  Instead, it adds two new common law counts for breach of fiduciary duty and accounting,[4] and includes information regarding Turan's website, defendants' representations about their relationships with officials in Washington, D.C. and their alleged failures to make filings at the SEC.  (*See, e.g.*, Am. Compl. ¶¶ 26-31.)  Plaintiffs have also added a reference to two criminal statutes apparently in an effort to bolster their jurisdictional arguments (*id*. ¶ 30), and they reference ongoing litigation in Las Vegas, Nevada and the Central District of California (*see, e.g.*, *id*. ¶¶ 32-38) as part of their discussion of defendants' alleged use of offshore entities and coconspirators as part of their scheme to defraud the plaintiffs.  However, not one of the new entities or individuals who is named in the amended complaint as having anything to do with this scheme is located in this jurisdiction.

Despite the obvious tactical advantage that plaintiffs should have gained by waiting to

---

[4]The other state claims include conversion, breach of contract, tortious interference with beneficial commercial relationship, fraud and misrepresentation, unjust enrichment, civil conspiracy, fraudulent conveyances, declaratory relief, damage to business reputation and damages for bodily injury, murder attempts.

file a dramatically expanded set of allegations until all of defendants' arguments for dismissal had been set forth, plaintiffs are still unable to provide a comprehensible statement of facts to support their blunderbuss approach to the law, nor have they succeeded in curing the many obvious problems identified in defendants' motions.  However, because the Court has concluded that this matter should be transferred on the basis of *forum non conveniens*, its consideration of the facts is far more limited than would be the case under Rule 12(b)(6), and the relevant facts can be explained briefly without attempting to provide a full exposition of plaintiffs' 350-paragraph amended complaint.[5]  In setting forth these facts, the Court relies exclusively on the amended complaint filed this past week, and as required by law, it has "accept[ed] the plaintiff[s'] well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff[s'] favor, and resolves any factual conflicts in the plaintiff[s'] favor." *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007) (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002)).  In applying this test, the Court is mindful that plaintiffs "bear[] the burden of establishing that venue is proper," *Hunter*, 517 F. Supp. 2d at 343 (quoting *Varma v. Gutierrez*, 421 F. Supp. 2d 110, 113 (D.D.C. 2006)),

---

[5]In *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1188 (2007), the Supreme Court held that a court can immediately take up the question of *forum non conveniens* and need not first consider whether it has subject-matter or personal jurisdiction. The doctrine of *forum non conveniens* has been codified at 28 U.S.C. § 1404(a), *see id.* at 1190-91, which permits a court to transfer a case when venue is proper in the original forum but another qualified district would be more convenient for the parties and witnesses.  *See Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 156 (D.D.C. 2008).  A different transfer provision, 28 U.S.C. § 1406(a), applies when venue is improper in the initial forum.  However, the rule in *Sinochem* has been extended to this situation as well.  *See DelGuercio v. NCI Construction Corp.*, Civ. No. 07-2350, 2007 WL 4287687, at *2 (D.N.J. Dec. 4, 2007) ("Because a dismissal or transfer pursuant to § 1406 represents a determination that the merits of the case *must* be adjudicated elsewhere, permitting such a determination to be made ahead of questions of subject matter and personal jurisdiction is a logical extension of *Sinochem*.") (emphasis in original).

but it is the defendants who "must present facts sufficient to defeat [plaintiffs'] assertion of venue" in order to prevail on their motions to dismiss. *Hunter*, 517 F. Supp. 2d at 343.

## II.    FACTUAL BACKGROUND

The facts, as set forth in the amended complaint, which are relevant to venue and transfer, are as follows. In 2001, the government of Kazakhstan granted Aral Petroleum Co. ("Aral") a concession to develop oil on five million acres in the Shymkent region of the country. (Am. Compl. ¶ 73.) Three years later, Aral entered into an agreement with Plaintiff Kazenercom TOO ("KEC") to form Turan Enerpetroleum TOO ("TEP"), a joint venture between Aral and KEC. (*Id*. ¶ 76.) Under the joint venture agreement, Aral vested TEP with all of its rights under the oil concession and provided KEC with a 49% interest in TEP. (*Id*.) Aral, KEC and TEP were all organized under the laws of Kazakhstan. (*Id*. ¶¶ 3, 73, 76.)

The other plaintiffs in the case comprise two groups. Kinozhuz, Public Foundation Our House Kazakhstan, and the Association of Kazakh Investors and Entrepreneurs were all investors in KEC's projects and consequently affected by KEC's alleged injuries. (*Id*. ¶¶ 4-6.) The remaining plaintiffs were employees of KEC. Yerkin Bektayev was the Director of KEC, as well as President of TEP. Berik Bektay was a senior advisor at KEC and Kanet Meirmanov performed seismic tests for the company. (*Id*. ¶¶ 7-9.) The plaintiffs are all either citizens of Kazakhstan or entities organized under the laws of Kazakhstan. (*Id*. ¶¶ 3-9.)

In March 2005, KEC purchased Aral's 51% share of TEP and sold it to Defendant Turan Petroleum, Inc. ("Turan"), a Nevada corporation headquartered in Costa Mesa, California, a

suburb southeast of Los Angeles.[6]  (*Id*. ¶¶ 10, 98-99.)  Plaintiffs' allegations stem from the manner in which Turan paid KEC for this acquisition.  Defendant Anatoly Vanetik, a Los Angeles area resident who was President of Turan at the time, agreed to pay for the acquisition using a combination of cash and Turan stock.  (*Id*. ¶¶ 15, 103-04, 108.)  Turan was to pay $450,000 to KEC and issue Turan shares to Bektayev, the Director of KEC.  (*Id*. ¶¶ 7, 103-04, 108.)  Some of the Turan stock was to be issued to Bektayev directly, while the rest was to be held by Trek Resources, Inc. ("Trek"), a company that shared Turan's California office.  (*Id*. ¶¶ 11, 104.)  Vanetik told Bektayev that he would have complete control over Trek.  (*Id*. ¶ 113.)

According to plaintiffs, defendants failed to abide by their payment agreement with KEC.  Defendants never made the promised $450,000 cash payment.  (*Id*. ¶ 122.)   More importantly, they claim that the stock that Bektayev received was virtually worthless because Turan was never intended to be a viable business; it was merely part of a Ponzi scheme to attract investors.  (*Id*. ¶ 102.)  Defendants employed a wide range of tactics to make Turan appear to be a legitimate business.  Vanetik and his son fabricated investments in the company.  (*Id*. ¶¶ 83-89.)  Turan misled plaintiffs about its relationships with various governmental entities, including the U.S. Department of Energy, the White House and the Embassy of Kazakhstan.[7]  (*Id*. ¶¶ 90-95.)  Turan also used trades between insiders to artificially inflate the value of its stock.  (*Id*. ¶¶ 96-102.)  According to plaintiffs, these insider transactions were not publicly disclosed as required

---

[6]Turan originated from Elite Registry, Inc.  (Am. Compl. ¶¶ 81-82.)  On December 28, 2004, Elite Registry was re-registered in the State of Nevada as Turan.  (*Id*.)

[7]According to plaintiffs, some of this misinformation was the work of Defendant Alex Striganov, a Los Angeles resident who worked for Turan.  (Am. Compl. ¶ 18.)  It is also alleged that Striganov hacked into a website and added defamatory information about Bektayev's late father.  (*Id*. ¶ 232.)

by the SEC. (*Id*. ¶ 136.) Plaintiffs also claim that the Turan stock was restricted, which meant that it could not be sold for two years. (*Id*. ¶ 105.) Turan failed to file a registration statement upon the expiration of this restriction. (*Id*.) It also neglected its obligations under the oil concession by failing to drill the requisite number of wells, thereby jeopardizing the license from the Kazakhstan government. (*Id*. ¶¶ 102, 137-38.)

Plaintiffs also claim fraud with respect to Trek, the entity that was to hold Turan stock for the sole benefit of Bektayev. Bektayev was not the sole shareholder of Trek as promised, and his 100,000 shares of Trek were dwarfed by the 75 million shares of authorized capital. (*Id*. ¶¶ 114-17.) And even if Turan had not diluted Bektayev's interest, he was legally prohibited from owning shares in Trek because he was a nonresident. (*Id*. ¶ 116.) Moreover, defendants issued two sets of the same Turan stock certificates to Trek, presumably in an attempt to defraud Bektayev of his shares. (*Id.* ¶¶ 123-26, 264-65.)

Defendants not only failed to adequately pay for the 51% interest in TEP, but they also defrauded plaintiffs out of the remaining 49% interest. According to plaintiffs, Yedil Kassymov, TEP's Director General, was secretly working on Turan's behalf. (*Id*. ¶ 110.) Kassymov lied by saying that he had permission from the Kazakhstan government to transfer KEC's remaining 49% interest to Turan. (*Id*.) In return, Turan paid Kassymov $102,000 without disclosing it to KEC. (*Id*.) However, before Turan could obtain 100% control of TEP, it had to fulfill its payment obligations with respect to the original deal for the 51% stake in TEP. (*Id*. ¶ 111.)

On January 7, 2006, Kassymov died. (*Id*. ¶ 139.) While his death was officially attributed to a heart attack, plaintiffs suggest that defendants had him killed in order to gain full control of the oil concession. (*Id*. ¶¶ 139-40.) In February Bektayev traveled to Los Angeles in

order to meet with Vanetik and others at Turan, and he replaced Kassymov as head of TEP.  (*Id.* ¶ 141.)  However, Turan began taking steps to undercut Bektayev in April.  (*Id.* ¶ 144.)  Bektayev was removed from Trek's list of officers while Defendant Alexander Kushnerenko, a Turan employee who resides in the Los Angeles area, assumed the leading role.  (*Id.* ¶¶ 19, 145.)  In May Turan informed Bektayev that he was no longer in charge of TEP.  (*Id.* ¶ 146.)

Around the time that Bektayev was fired, defendants engaged in a secondary distribution of Turan stock allegedly in violation of Section 5 of the 1933 Securities Act, 15 U.S.C. § 77e.  (*Id.* ¶ 157.)  According to plaintiffs, insiders such as Vanetik and his son defrauded other investors by selling shares without first registering as underwriters.  (*Id.* ¶¶ 158-61.)

A year later, Bektayev claims that Vanetik and Kushnerenko tried to have him killed.  Bektayev was stabbed outside of his office in Kazakhstan on July 11, 2007.  (*Id.* ¶¶ 180-83.)  Bektayev returned to Los Angeles in July 2008 to meet with Defendants Askar Karabayev and Naum Voloshin, both of whom reside in the Los Angeles area.  (*Id.* ¶¶ 14, 16, 222.)  The meeting took place at Turan's office in Costa Mesa, California.  (*Id.* ¶ 222.)  Karabayev had recently become President of Turan, and Voloshin was the company's Chief Operating Officer.  (*Id.* ¶¶ 14, 16.)  Bektayev claims that Karabayev and Voloshin threatened him by suggesting that the next attack would be done "professionally" with automatic rifles and would be guaranteed to succeed.  (*Id.* ¶ 223.)

A second murder attempt occurred on October 31, 2008, when Bektayev was shot five times in Almaty, Kazakhstan.  (*Id.* ¶¶ 236-37.)  He claims that Karabayev, Vanetik and others at

Turan were behind this attack.[8] (*Id.* ¶ 241.)

## ANALYSIS

Based on these facts, the Court must decide whether plaintiffs have established venue in the District of Columbia. If venue is not proper here, the case must be transferred or dismissed pursuant to 28 U.S.C. § 1406(a). If venue is proper, the Court must determine whether this case should be transferred because convenience and justice favors adjudication in a different venue under 28 U.S.C. § 1404(a). To this end, the Court will first consider both the general venue statute, 28 U.S.C. § 1391(b), and specific venue statutes under RICO and the securities laws to determine if defendants' Rule 12(b)(3) motions should be granted, and then, it will decide whether to exercise its discretion to transfer this case to the Central District of California under 28 U.S.C. § 1404(a).

**I.     VENUE**

*A. General Venue under 28 U.S.C. § 1391(b)*

Because jurisdiction is not based solely on diversity of citizenship, the applicable venue provision is 28 U.S.C. § 1391(b).[9] Under this statute, there are three routes available for

---

[8]The only other defendants named in the amended complaint include Ibar Development, Inc., which was incorporated in California and shares its office with Turan, and was allegedly involved in fraudulent transfers of Turan stock to offshore entities (Am. Compl. ¶¶ 13, 172, 175); Ibar Ventures LLC, which is a Delaware-based entity that Karabayev allegedly used as a vehicle for "siphoning" assets from Turan (*id.* ¶¶ 12, 248(d,e)); and Timur Koichumanov, a citizen of Kazakhstan who frequently visited the Los Angeles area and was on Turan's Board. (*Id.* ¶¶ 17, 205.)

[9]Plaintiffs also allude to several other provisions for establishing venue. First, they attempt to rely on 18 U.S.C. §§ 1512 and 1513, but it is well-established that these criminal statutes do not confer a private right of action, so their venue provisions are irrelevant to a civil case. *See, e.g.*, *Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *4 (N.D. Ill. Sept. 10, 2008); *Jyan v. Frankovich*, C 94-20883-JW, 1995 WL 396846, at *2 (N.D. Cal. June 29, 1995).

establishing venue. First, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." *Id.* at § 1391(b)(1). Since no defendant resides in the District of Columbia, there is no venue on this basis. Second, venue is proper in "a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." *Id.* at § 1391(b)(3). But as explained below, this action can be brought in the Central District of California, so this provision does not apply. Finally, the last possibility is if "a substantial part of the events or omissions giving rise to the claim occurred" in the District of Columbia. *Id.* at § 1391(b)(2). As explained above, the gravamen of plaintiffs' complaint is that defendants engaged in a scheme to defraud them out of their interest in an oil concession. This fraud allegedly involved acts by Turan, its affiliates and its employees, none of whom is a resident of the District of Columbia; none of the plaintiffs has any connection to the District of Columbia, since they are all located in Kazakhstan; and the locus of the significant activities relating to plaintiffs' claims is either southern California or Kazakhstan, *not* the District of Columbia.

In response, plaintiffs offer several weak retorts. First, they suggest that the government of Kazakhstan may intervene in the case through its embassy here. (Pls.' Opp'n to Seven Defs. at 19.) However, this is pure speculation, as the government of Kazakhstan is not currently involved in this case even though it was filed over four months ago. Second, plaintiffs argue that

---

Second, they argue that venue is proper because 28 U.S.C. § 1391(d) states that "[a]n alien may be sued in any district." However, "[w]here aliens and non-aliens are joined as defendants, venue for the entire action is proper in any district where it is correct as to non-alien defendant." *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 857 (N.D. Ill. 2005). Since, according to plaintiffs' allegations, defendants comprise both aliens (*e.g.*, Koichumanov) and non-aliens (*e.g.*, Turan), venue must still be proper with respect to a non-alien defendant.

venue is justified by defendants' alleged attempts to promote their connections to Washington, D.C. (*Id*. at 14-19.) Specifically, plaintiffs claim that defendants maintained a website that promoted their relationships with officials at the U.S. Department of Energy, touted an autographed picture of President George W. Bush and made representations about their connections in the Kazakhstan Embassy. (Am. Compl. ¶¶ 90-95.) However, while these allegations may have some tangential relevance to the issue of personal jurisdiction, an issue that this Court need not reach (*see* note 5, *supra*), they are irrelevant to the question of venue.

In sum, plaintiffs cannot satisfy any of the requirements of 28 U.S.C. § 1391(b) so the Court must turn to the specific venue provisions that plaintiffs have referenced.

*B. Specific Venue -- RICO -- 18 U.S.C. § 1965 (a) and (b)*

Venue may also arise from two provisions in the RICO statute. First, 18 U.S.C. § 1965(a) states that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." As previously discussed, no defendant resides in the District of Columbia, and plaintiffs do not allege that any of them have an agent here or can be found here. Thus, the only way for plaintiffs to obtain venue under § 1965(a) is to show that at least one defendant transacts affairs here. A business transacts its affairs in a district "if in fact, in the ordinary and usual sense, it 'transacts business' therein of any *substantial* character." *Mylan Lab., Inc. v. Akzo, N.V.*, No. 89-cv-1671(TFH), 1990 WL 58466, at *6 (D.D.C. Mar. 27, 1990) (internal citations omitted) (emphasis in original). Under this test, the "connections"[10]

---

[10]For instance, plaintiffs mention that Yuri Vanetik, a Turan principal, showed plaintiffs an autographed picture of him posing with President Bush that was signed "To Yuri, Best Wishes." (Am. Compl. ¶ 94.)

with Washington officials that plaintiffs rely upon are neither substantial enough nor do they qualify as "transact[ing] business." (*See* Am. Compl. ¶¶ 90-95.)

The other RICO venue provision, 18 U.S.C. § 1965(b), is also of no help. Section 1965(b) permits venue "in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court." In other words, if venue is appropriate with respect to one defendant, a court can bring additional defendants to the same forum. Section 1965(b) does not alter the requirement of § 1965(a) that venue must be appropriate for at least one defendant. *See FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099-1100 (D.C. Cir. 2008). In fact, even if venue could be proper with respect to one defendant, a court can still decline to find venue under § 1965(b) when "the majority of witnesses, records, and alleged acts or omissions took place in another jurisdiction." *Crenshaw v. Antokol*, 287 F. Supp. 2d 37, 44 (D.D.C. 2003) (internal citations omitted). Since venue is not appropriate here for any defendant, venue cannot be based on the RICO statute.[11]

  *C. Specific Venue -- Securities Laws -- 15 U.S.C. §§ 77v and 78aa*

The final avenue for asserting venue is under the Securities Act of 1933, 15 U.S.C. § 77v,

---

[11]Moreover, it is noteworthy that plaintiffs have failed to cite any case law in support of their position, for the two cases they rely upon are inapposite. (*See* Pls.' Opp'n to Seven Defs. at 23-25.) First, the cases deal primarily with personal jurisdiction, not venue. *See Dooley v. United Technologies et al.*, 786 F. Supp. 65, 71 (D.D.C. 1992) ("a plaintiff seeking to carry his burden of proving *personal jurisdiction* . . .") (emphasis added); *BCCI Holdings v. Khalil*, 20 F. Supp. 2d 1, 6 (D.D.C. 1997) ("A defendant need not transact extensive business in the District of Columbia to be subject to *personal jurisdiction* here.") (emphasis added). In fact, *BCCI Holdings* did not address venue at all. Second, the court in *Dooley* denied transfer because a substantial portion of the events had occurred in the District of Columbia, which is not the case here. *See Dooley*, 786 F. Supp. at 80 ("a substantial part of the conspiracy . . . was centered in Washington, D.C.").

and the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.[12] The analyses for venue and personal jurisdiction are identical under these securities statutes. *See, e.g.*, *Eacho v. N.D. Resources, Inc.*, No. 83-cv-2903, 1985 WL 1717, at *7 (D.D.C. May 24, 1985) ("Once venue is established under Section 27 [*i.e.*, § 78aa], personal jurisdiction automatically exists because Section 27 allows 'the assertion of nationwide *in personam* jurisdiction.'") (quoting *Allegaert v. Warren*, 480 F. Supp. 817, 819 (S.D.N.Y. 1979)).

Both statutes provide venue in a district where a "defendant is found or is an inhabitant or transacts business," but the Court has already determined that defendants do not have such ties to the District of Columbia. However, venue is also proper in any district "in which a criminal proceeding, based on the same illegal conduct, could be brought," *Investors Funding Corp. of New York v. Jones*, 495 F.2d 1000, 1002 (D.C. Cir. 1974) (citing 28 U.S.C. § 78aa), and therefore, the failure to comply with SEC filing requirements can support venue in the District of Columbia because this conduct could be prosecuted here. *Investors Funding*, 495 F.2d at 1003. *See also Poling v. Farrah*, 131 F. Supp. 2d 191, 193-94 (D.D.C. 2001) (citing *Investors Funding* for the proposition that failure to submit a timely filing to a federal agency is grounds for venue in the District of Columbia); *SEC v. Wallace*, 94 F. Supp. 2d 1, 2 (D.D.C. 2000) (venue was proper because defendants failed to register with the SEC as investment advisors).

As is apparent from the amended complaint, the factual basis for plaintiffs' securities claims is difficult to discern. Rather than clearly tying defendants' acts to specific violations of

---

[12]Plaintiffs also cite 15 U.S.C. §§ 77z-1 and 78i (Am. Compl. ¶ 21), but neither provides a basis for venue, as § 77z-1 applies only to class actions and § 78i merely allows plaintiffs to bring suit before "any court of competent jurisdiction," *id*. at § 78i(e), and it does not provide an independent basis for venue.

13

the securities laws, plaintiffs merely provide a laundry list of securities statutes. (Am. Compl. ¶ 270.) This is not consistent with their burden of proving that their chosen venue is correct. *See Hunter*, 517 F. Supp. 2d at 343. Nevertheless, plaintiffs appear to allege that defendants failed to make required SEC filings. (Am. Compl. ¶ 31.) For example, they claim that defendants failed to disclose certain insider trades that were intended to artificially inflate the value of Turan stock. (*Id*. ¶ 136.) Plaintiffs suggest that these omissions facilitated the fraud because if the disclosures had been made, investors would have known that these trades involved small amounts of stock between insiders and did not reflect the true market value. (*Id*.) If these omissions violated the Securities Exchange Act of 1934, venue would be proper at least with respect to Count II.[13] *See Investors Funding*, 495 F.2d at 1002. Accordingly, the Court will assume that venue is proper[14] and will proceed to consider whether the case should be transferred

---

[13]The Seven Defendants argue that the alleged failure to make SEC filings cannot constitute jurisdiction (and correspondingly venue) because the government contacts doctrine "precludes the assertion of personal jurisdiction over a non-resident whose only contact with the District of Columbia is with Congress or a federal agency." (Seven Defs.' Reply at 6-7, quoting *Dooley*, 786 F. Supp. at 75 (internal citation omitted).) *See also Investment Co. Institute v. United States*, 550 F. Supp. 1213, 1217 (D.D.C. 1982). However, these cases are distinguishable from *Investors Funding*, where the D.C. Circuit held that venue could be found in the District of Columbia because defendants' failure to timely submit SEC filings subjected them to prosecution here. *Id*. at 1003. The government contacts doctrine does not apply to situations where the filings, or lack thereof, form the basis for the allegations and subject a defendant to prosecution in the District of Columbia. Rather, the doctrine applies to plaintiffs who are attempting to base jurisdiction or venue on routine government filings that have nothing to do with their allegations. *See, e.g.*, *Investment Co. Institute*, 550 F. Supp. at 1217.

[14]While the Court has found that venue is possible with respect to only one of plaintiffs' fourteen claims, the remaining claims could also be heard by this Court under the doctrine of pendent venue. *See, e.g.*, *Banfield v. UHS Home Attendants, Inc.*, No. 96 CIV. 4850(JFK), 1997 WL 342422, at *2 (S.D.N.Y. June 23, 1997) ("Under the doctrine of 'pendent venue,' a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative fact as a properly venued federal law claim, even if venue of the pendent claim otherwise would not lie. . . . In determining whether to exercise pendent venue of a claim, the Court must

to the Central District of California under § 1404(a).

**II.     *FORUM NON CONVENIENS* UNDER § 1404(a)**

The final question for the Court is whether to transfer this case pursuant to 28 U.S.C. § 1404(a).[15]  Plaintiffs do not contest the fact that they could have brought this action in the Central District of California (Pls.' Opp'n to Seven Defs. at 8, 19-25; Pls.' Opp'n to Vanetik at 10-11, 21-27), nor could they, since it is clear that "a substantial part of the events or omissions giving rise to the claim occurred" there.  28 U.S.C. § 1391(b).

The Court must therefore determine whether transfer would be convenient for the parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).  This determination is based on a weighing of private and public factors.  *See Montgomery v. STG Int'l, Inc.*, 532 F. Supp. 2d 29, 32-34 (D.D.C. 2008).  The private factors include "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof."  *Id.* at 32-33 (internal citation omitted).

The private factors overwhelmingly favor transfer.  First, plaintiffs' choice of forum receives minimal deference because not one of the plaintiffs resides in the District of Columbia.

---

consider 'judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants.'") (citing *Rodriguez v. Chandler*, 641 F. Supp. 1292, 1302 (S.D.N.Y. 1986)).

[15]As recognized by the court in *In re Yahoo! Inc.*, No. CV 07-3125 CAS (FMOx), 2008 WL 707405, at *7 (C.D. Cal. Mar. 10, 2008), a finding of venue under the securities laws has no bearing on a court's analysis under § 1404(a), and while plaintiffs are "free to lay venue in the forum of their choice, that choice of forum must be measured by the standards of § 1404(a)."

15

*See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).  The fact that plaintiffs' counsel is in the District of Columbia is of little significance.  *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 52 n.7 (D.D.C 2000) (internal citation omitted).  But most importantly, plaintiffs' claims arise from events that took place in California.  In addition, the Central District of California would be much more convenient for the defendants and the witnesses, many of whom reside in the Los Angeles area.  While that forum would lead to a slightly longer trip for those plaintiffs who must come from Kazakhstan, a flight from that country to anywhere in the United States will be very time-consuming, and the additional flying time beyond D.C. to California is hardly of any real significance.

In response, plaintiffs suggest that they may not be available for trial if the case is moved to the Los Angeles area, because they would fear for their safety.  (Pls.' Opp'n to Seven Defs. at 20-21.)  In *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153 (D.D.C. 2008), the Court considered a plaintiff's personal safety concerns as one of several private interest factors under § 1404(a).  While safety may be a valid consideration, the Court finds that plaintiffs' purported concerns do not justify keeping this case in the District of Columbia, especially since both of the alleged attempts on Bektayev's life occurred not in California, but in Kazakhstan.  And, while plaintiffs claim that defendants threatened Bektayev in California, there is nothing to suggest that Bektayev would be in any greater danger in California than he would be here in the District of Columbia.

Finally, sources of proof are much more likely to be in California than in the District of Columbia.  California is where all of the relevant business records are located, and all of the Turan employees either live there or frequently visit the area.  Plaintiffs argue that several

sources of proof, such as documents from the SEC and the Department of Energy, are located in the District of Columbia. (Pls.' Opp'n to Seven Defs. at 24.) However, since plaintiffs' claims rely mainly on *omissions* with respect to the SEC, it is not clear what documents plaintiffs are referring to. Likewise, the Department of Energy is, at best, peripheral to plaintiffs' allegations, so it is unlikely that this agency possesses documents important to this case.

The public factors include: "1) the transferee's familiarity with the governing laws, 2) the relative congestion of each court, and 3) the local interest in deciding local controversies at home." *Montgomery*, 532 F. Supp. 2d at 34 (internal citation omitted). Under the District of Columbia's choice of law rules, California law would likely apply to plaintiffs' state law claims.[16] Therefore, the first factor favors the Central District of California. The parties have failed to present any information about relative congestion, so the Court does not place any weight on this factor. However, the final factor weighs heavily in favor of the Central District of California, as it has a special interest in cases involving companies headquartered in that state, *see Hitchcock v. United States*, 665 F.2d 354, 360 (D.C. Cir. 1981), whereas the District of Columbia has absolutely *no* ties to the parties or the events in question. Accordingly, because both the private and public factors strongly favor the Central District of California, transfer is appropriate under § 1404(a).

---

[16]*See Jaffe v. Pallotta TeamsWorks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004) (Under D.C.'s substantial interest test, choice of law depends on "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship is centered.") (internal citations and quotations omitted).

## CONCLUSION

For the reasons stated above, transfer to the Central District of California is appropriate under 28 U.S.C. § 1404(a). Therefore, the Court will grant defendants' motions in part.[17] A separate Order accompanies this Memorandum Opinion.

/s/<br>
ELLEN SEGAL HUVELLE<br>
United States District Judge

DATE:    December 19, 2008

---

[17] Because the Court is transferring the case based on § 1404(a), it need not reach defendants' motions under Fed. R. Civ. P. 12(b)(1),(2),(5),(6) and 12(f)(2), and these will be addressed by the transferee court.