1  Paul Evan Greenwald (Bar No. 57162)
   Paul A. Hoffman (Bar No. 146805)
2  John R. Flocken (Bar No. 97137)
   **GREENWALD & HOFFMAN, LLP**
3  1851 E. First Street, Suite 860
   Santa Ana, California 92705
4  Telephone:  (714) 285-0025
   Facsimile:   (714) 285-0028
5
   Attorneys for Specially Appearing for
6  Third-Party Defendants, ASIA PACIFIC OIL &
   GAS LTD., a Seychelles Islands entity,
7  AMIRZHAN JAKISHEV, and ADILZHAN DZHAKISHEV

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 | KAZENERCOM TOO; ET AL.,          | ) CASE NO.  08:09cv00059-JVS

12 |                      Plaintiffs, | )
                                        | ) Assigned for All Purposes to:
13 |        v.                        | ) Hon. James V. Selna
                                        | ) Dept: 10C
14 | TURAN PETROLEUM, INC.; ET AL.,   | )
                                        | ) Date Action Filed January 14, 2009
15 |                     Defendants.  | ) Trial Date: None Set

16 | TURAN PETROLEUM, INC.,           | )
                                        | ) **DECLARATION  OF  ADILZHAN
17 |     Defendant and Counterclaimant, | ) DZHAKISHEV IN SUPPORT OF THIRD-
                                        | ) PARTY  DEFENDANTS'  MOTION  TO
18 |        v.                        | ) DISMISS  AMENDED  THIRD-PARTY
                                        | ) COMPLAINT**
19 | YERKIN   BEKTAYEV   and   KANET  | )
   MEIRMANOV,                        | )
20 |                                  | ) [Filed concurrently with: [Proposed] Order;
   |   Plaintiffs and Counterdefendant. | ) Motion to Dismiss; Declarations of Amirzhan
21 |                                  | ) Jakishev and Paul A. Hoffman]
   | TURAN PETROLEUM, INC.,           | )
22 |                                  | )
   |    Defendant and Third-Party Plaintiff, | ) Date:         August 31, 2009
23 |                                  | ) Time:         1:30 p.m.
   |        v.                        | ) Courtroom:   10C
24 |                                  | )
   | WELLS FARGO, N.A., YERKIN AKKUZOV, | )
25 | SABIRGAN DUHALIEV, IGOR MAXIMOV, | )
26 |    Defendants in Third-Party Complaint. | )
27 |                                  | )
   | YERKIN   BEKTAYEV   and   KANET  | )
28 | MEIRMANOV,                       | )

                                    1
───────────────────────────────────────────────
**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY
DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

|  |  |  |
|---|---|---|
| 1 | Counterdefendants and Third-Party | ) |
| 2 | Plaintiffs, | ) |
|  |  | ) |
| 3 | v. | ) |
|  |  | ) |
| 4 | ASIA PACIFIC OIL & GAS LTD. (incorporated | ) |
| 5 | in the Seychells Islands); AMIRGAN | ) |
|  | DZHAKISHEV, ADILZHAN DZHAKISHEV, | ) |
| 6 | YURI VANETIK; ROBERT VAN DUREN; | ) |
|  | ROBIN BISARYA; OKKE FINANCIAL LTD.; | ) |
| 7 | ALCINA COMPANY CORP., PINGTON | ) |
|  | INVESTMENT LTD.; PINE BROOK S.A., | ) |
| 8 | HINES INVESTMENTS S.A.; ESSEX | ) |
| 9 | MANAGERS LTD.; VARRIAL FINANCIAL | ) |
|  | TRADING LTD.; COAST FINANCE LTD.; | ) |
| 10 | FREEMAN FREEMAN SMILEY LLP, | ) |
|  |  | ) |
| 11 | Third-Party Defendants. | ) |
| 12 | _____ | ) |

I, Adilzhan Dzhakishev, declare:

1.      I am a citizen of the nation of Kazakhstan.  I temporarily reside in the United States on a student visa.  I am a third party defendant in the above action.  I make this Declaration based on my own knowledge and, if called as a witness, could and would testify competently to the matters stated herein.

2.      I am a director of third-party defendant Asia Pacific Oil & Gas Ltd.  Asia Pacific is a foreign entity organized and existing under the laws of the Seychelles Islands and has its principal place of business in London, England.  Asia Pacific does not have any offices in the United States.  I am a former judge employed by the nation of Kazakhstan and am very familiar with its laws regarding service of process.  I retired from being a Judge in July, 2008.

3.      I am informed that third-party plaintiffs Yerkin Bektayev and Kanet Meirmanov ("Plaintiffs") attempted to serve the original Verified Third-Party Complaint in

**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

this matter on me, my brother Amirzhan Jakishev,[1] and Asia Pacific by mail or delivery thereof to my former residence, located at 30 Rubinshtein Street, Almaty, Republic of Kazakhstan.  The current residents at the time of the attempted service at the above address are not and never have been managing or general agents, employees, officers or directors of Asia Pacific.  Nor have they ever been managing or general agents or employees for me or my brother Amirzhan.  Nor have they ever been authorized by Asia Pacific, me, or my brother, to accept service of process or any legal action against Asia Pacific, me, or my brother.  At the time of such attempted service, I was not there, nor did I live at that location any more.  Nor were any of the other third party defendants present at the time of such attempted service.  Based on my understanding of the law of the Republic of Kazakhstan, the method of service used by Plaintiffs did not comply with the methods of service for the courts of general jurisdiction of the Republic of Kazakhstan.

4.      I am further informed that Plaintiffs claim that they served the Verified Amended Third-Party Complaint in this matter on me, my brother Amirzhan, and Asia Pacific by electronic mail and First Class mail on or about June 30 and/or July 8, 2009, at a residence located at 33 Skyridge, Newport Coast, California 92657, where I temporarily lived during 2008.  Attached as **Exhibit 1** is a true and correct copy of the mailing envelope used to mail the Verified Amended Third-Party Complaint addressed to me.  Attached as **Exhibit 2** is a true and correct copy of the mailing envelope used to mail the Verified Amended Third-Party Complaint addressed to my brother Amirzhan.  Attached as **Exhibit 3** is a true and correct copy of the mailing envelope used to mail the Verified Amended Third-Party Complaint addressed to Asia Pacific.  Neither I nor my brother Amirzhan reside

---

[1] My brother, Amirzhan Jakishev, and I have the same last name, but mine is spelled differently in English because it was misspelled some years ago on my original passport and visa documents and has remained a different spelling from my brother's last name ever since that time on all my official documents.

**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

at that residence. Nor do we or Asia Pacific have a place of business at that residence. Nor were any of us present at the time of such alleged service.

5.      The residents at 33 Skyridge, Newport Coast, California 92657, at the time of the alleged service on June 30, 2009, were not and never have been a managing or general agents, employees, officers or directors of Asia Pacific. Nor have they ever been managing or general agents or employees for me or my brother Amirzhan. Nor have they ever been authorized by Asia Pacific, me, or my brother to accept service of process or any legal action against Asia Pacific, me, or my brother. I am unaware if Plaintiffs attempted to serve Asia Pacific, me, or my brother by any other means than described above.

6.      Regarding contacts in California or the United States, Asia Pacific does not have any offices or telephone numbers in California or the United States. Neither me, my brother Amirzhan, nor Asia Pacific have ever imported or otherwise distributed any products to consumers in the State of California or anywhere else in the United States. Neither my brother, Amirzhan, nor Asia Pacific owns or leases any real property in California or the United States. Nor have Amirzhan, Asia Pacific, or I conducted any advertising or marketing in California or the United States. Nor do we have registered agents for service of process in the United States. Other than the present special appearance, we have not sought use of the courts within California or elsewhere in the United States. Nor have any of us been personally served with process or papers for any lawsuit in California or the United States. Nor have any of us operated a business, operated a web site, or issued press releases in the United States. Neither Asia Pacific nor my brother have ever applied for a loan or opened a bank account in California.

7.      Plaintiffs allege that Asia Pacific "engages in business in the U.S. and internationally" and "is subject to the jurisdiction of this Court because it was used for the

4

**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

unlawful transfer of 20% of the assets represented by the rights under the Concession, because it became involved with Turan's assets in California, and because [Asia Pacific] was a transferee of assets in violation of the California Uniform Fraudulent Transfer Act." (Verified Third-Party Complaint, ¶ 6.)  None of these allegations of the Verified Amended Third-Party Complaint are true or have any basis in fact.  Asia Pacific did not receive any monies originating from Turan's assets in California; rather, it was Turan that received $5,000,000 (U.S.) from Asia Pacific as an investment in Turan Enerpetroleum, a Kazakhstan company, and for the right to exercise an option to purchase Turan Petroleum's shares, an option which Asia Pacific thus far has not been permitted to exercise.  Nor was Asia Pacific used to transfer any assets in violation of any fraudulent transfer laws.

8.      I am the holder of a temporary visa to study in the United States, which may terminate at any time that I cease studying here.  I do not have any intention of residing permanently in California or the United States.  Before February of 2008, I had never lived in California or the United States.  I had visited California once in 2006, while on a short vacation here, and I traveled a couple of times to the eastern United States during the last several years.  I came to live temporarily in California from February, 2008, to June 2008.  I returned to Kazakhstan from June to August, 2008, to be married, then returned to California, in August, 2008, where I have since been studying English and business management at the University of California at Irvine.

9.      I am neither the agent nor nominee for Asia Pacific for service of process.  Contrary to Plaintiffs' allegations, I have not been involved in any unlawful transfer of Turan's or any other entity's stock, I have not been involved in the receipt of proceeds that originated from California, and I have not knowingly violated any California laws, including

5

**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

the California Uniform Fraudulent Transfer Act, or any other law, or damaged Plaintiffs in any way.

10.     I have neither conducted nor solicited any business in California or the United States, other than entering into a joint venture contract in New York that never went beyond the contract negotiation stage. Asia Pacific has neither conducted nor solicited any business in California or the United States other than stock purchase and stock option purchase contracts with Turan Petroleum on January 7, 2009. On that day, Asia Pacific agreed to purchase 20 percent of the shares of a Kazakhstan company, named Turan Enerpetroleum, LLP, after I was solicited by its parent company, Turan Petroleum, Inc., a Nevada corporation. Asia Pacific also entered into a contract granting an option to Asia Pacific to purchase 10,000,000 shares of Turan Petroleum. The total package, purchase of shares in Turan Enerpetroleum and the purchase of stock options in Turan Petroleum, was granted in exchange for $5,000,000.00 (U.S.), which was paid to Turan Petroleum.

11.     Attached hereto as **Exhibit 4** is a true and correct copy of the original, executed version of the Sale Agreement of Shares in the Capital of Turan Enerpetroleum LLP, dated January 7, 2009, which was written and executed in the Russian language. Attached hereto as **Exhibit 5** is a true and correct copy of the unexecuted English translation of **Exhibit 4**, the Sale Agreement of Shares in the Capital of Turan Enerpetroleum LLP. Attached hereto as **Exhibit 6** is a true and correct copy of the executed Stock Option Agreement, Turan Petroleum, Inc., dated January 7, 2009, which was originally written and signed in English. Both of these closely-related agreements are governed by *foreign law* (i.e., Kazakhstan and Nevada) and relate to the purchase of shares of *foreign companies* (i.e., Kazakhstan and Nevada).

12.     Notwithstanding the purchase of the right to exercise the stock options in

**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

**Exhibit 6**, I have not been able to exercise the stock options to purchase the shares of Turan Petroleum and no services have been performed pursuant to these agreements.

13.    Since the foregoing transaction is governed entirely by foreign law and concerns the purchase of shares only in two foreign entities, there is nothing in Asia Pacific's actions which shows that it is invoking the benefits and protections of California laws and the fact that the agreements were signed in California is solely because I, as director, was a student in California at the time such contracts were signed. There was no intention to invoke California law, as shown by the face of **Exhibits 5 and 6**.

14.    The transfer of 20% of Turan Enerpetroleum's stock merely represented a stock purchase or investment, not a purchase or transfer of assets, in a Kazakhstan company whose primary purpose is to explore and develop oil and gas fields in Kazakhstan. This foreign stock purchase was concerned with development of a foreign oil concession and it is merely incidental that the agreement was signed in California. No California assets, interests, or companies were involved in this transaction. Thus, Asia Pacific clearly was not performing some act by which it purposefully availed itself of the privilege of conducting activities in California. Moreover, the place of execution of the contract does not show that Asia Pacific was invoking the benefits and protections of California law because both agreements are clearly governed by foreign, not California, law. See **Exhibit 5**, at §5.8 and **Exhibit 6**, at §6.3.

15.    Asia Pacific did not receive any monies from this stock purchase transaction involving Turan Petroleum, as shown on the face of **Exhibits 5 and 6**. Instead, Asia Pacific paid $5,000,000 (U.S.) to make a stock investment in two foreign companies.

16.    Plaintiffs' claims do not arise out of my forum-related activities because I am

**DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY
DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT**

in California solely pursuant to a study visa.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed on this *15* day of July, 2009, in *Newport Coast*, California.

_____
ADILZHAN DZHAKISHEV

DECLARATION OF ADILZHAN DZHAKISHEV IN SUPPORT OF THIRD-PARTY
DEFENDANTS' MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT




U.S. POSTAGE
PAID
IRVINE,CA
JUN 30 '09
AMOUNT
$8.30
0006299924

92657

1006

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL

7005 2570 0001 4255 1233

PRIORITY MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 106A, May 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.





PRIORITY MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 106A, May 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.




PRIORITY MAIL
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 106A, May 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.





Adilzhan Dzhakoshev
33 Skyridge
Newport Coast, CA 92657

SORKIN LAW GROUP APLC
Alina Sorkin, Esq.
16485 Laguna Canyon Road, Suite 230
Irvine, California 92618

EXHIBIT 1





U.S. POSTAGE
PAID
IRVINE, CA
92618
JUN 30, 09
AMOUNT
$8.30
00062999-24

92657

1006

UNITED STATES POSTAL SERVICE



**PRIORITY MAIL**

UNITED STATES POSTAL SERVICE

**First Class**

Visit us at usps.com

Label 106A, May 2008

This product is for use with Priority Mail shipments. Misuse may be a violation of federal law. This tape is not for resale.




CERTIFIED MAIL

7005 2570 0001 4255 1240




**PRIORITY MAIL**

UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 106A, May 2008

This product is for use with Priority Mail shipments. Misuse may be a violation of federal law. This tape is not for resale.




**PRIORITY MAIL**

UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 106A, May 2008

This product is for use with Priority Mail shipments. Misuse may be a violation of federal law. This tape is not for resale.



SORKIN LAW GROUP APLC
Alina Sorkin, Esq.
16485 Laguna Canyon Road, Suite 230
Irvine, California 92618

Amirgan Dzhakoshev
33 Skyridge
Newport Coast, CA 92657

EXHIBIT 2






U.S. POSTAGE
PAID
IRVINE, CA
92619
JUN 30 09
AMOUNT
$8.30
00062999-2



1006          92657





**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 106A, May 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.

CERTIFIED MAIL

7005 2570 0001 4255 1226








**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 106A, May 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.



**PRIORITY MAIL**
UNITED STATES POSTAL SERVICE
Visit us at usps.com
Label 106A, May 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resala.



**PRIORITY MAIL**
TES POSTAL SERVICE
usps.com
y 2008

This product is for use with Priority Mail® shipments. Misuse may be a violation of federal law. This tape is not for resale.

SORKIN LAW GROUP APLC
Alma Sorkin, Esq.
16485 Laguna Canyon Road, Suite 230
Irvine, California 92618

Asia Pacific Oil & Gas Ltd.,
33 Skyridge
Newport Coast, CA 92657

EXHIBIT 3

# Договор

Купли-продажи доли в уставном капитале

### ТОО "ТУРАН ЭНЕРПЕТРОЛЕУМ"

г. Алматы                                                   7 января 2009 года

Корпорация "Туран Петролеум, Инк", именуемая в дальнейшем "Продавец", в лице Председателя Совета Директоров Аскара Карабаева, действующего на основании решения Совета Директоров от 7 января 2008 года, с одной стороны,
и
Фирма "Азия Пасифик Ойл энд Газ", именуемая в дальнейшем "Покупатель", в лице директора Адильжана Джакишева, действующего на основании Устава, с другой стороны, совместно именуемые как "Стороны", а по отдельности, как указано выше или "Сторона", заключили настоящий договор о нижеследующем:

## 1.   ПРЕДМЕТ ДОГОВОРА

1.1. Продавец обязуется продать, а Покупатель приобрести долю в размере 20% от уствного капитала ТОО "Туран Энерпетролеум" (далее по тексту – Доля) и уплатить цену продажи за указанную долю в порядке и на условиях, определенных настоящим договором.

1.2. Право собственности у Покупателя на долю возникает с даты регистрации в органах юстиции Республики Казахстан.

## 2.   СВЕДЕНИЯ О ТОО "ТУРАН ЭНЕРПЕТРОЛЕУМ"

2.1. ТОО "ТУРАН ЭНЕРПЕТРОЛЕУМ" зарегистрировано Департаментом юстиции г. Алматы 08.06.2004 г. – Свидетельство о гос.регистрации №63711-1910-ТОО, далее по тексту – "Товарищество".

## 3.   ЦЕНА ПРОДАЖИ.

3.1. Цена продажи доли по настоящему договору составляет $5,000,000.00 (пять миллионов)  долларов США.

3.2. Цена продажи, указанная в п.3.1 настоящего договора, подлежит оплате следующим образом:

3.2.1.  При подписании настоящего договора покупатель выдает продавцу денежное обязательство (гарантийное письмо или Promissory Note) на сумму согласно пункту 3.1 настоящего договора, которое является приложением к настоящему Договору.

3.2.2.  Срок погашения упомянутого в пункте 3.2.1 денежного обязательства путем денежного перевода устанавливается в течение 3-х банковских дней после регистрации права собственности согласно пункту 1.2 настоящего договора. Денежный перевод по настоящему Договору может быть осуществлен третьей стороной. Денежное обязательство Покупателя может быть уступлено любой третьей стороне.

EXHIBIT 4

3.2.3.  Регистрация согласно пункту 1.2, в свою очередь, осуществляется после получения разрешения межведомственной комиссии МЭМР и отказа государства от реализации своего приоритетного права на покупку доли согласно статьи 71 пункт 3 Закона РК "о Недрах и Недропользовании". Обязательство по получению вышеупомянутого разрешения берет на себя продавец.

3.3.  Все расходы, связанные с государственной перерегистрацией Товарищества в связи с   изменением состава участников несет Товарищество.

## 4.  ОБЯЗАННОСТИ СТОРОН

4.1 Обязанности Продавца:

4.1.1. Продавец обязан передать Покупателю Долю на условиях, определенных настоящим Договором;

4.1.2. Продавец гарантирует Покупателю, что на момент заключения настоящего Договора Доля не находится в залоге или иным обременением, не состоит под арестом, а также обязуется незамедлительно уведомить Покупателя в письменном виде о возникновении претензий третьих лиц в отношении Доли.

4.1.3. Продавец обязуется выполнять все условия настоящего договора в срок.

4.2. Обязанности Покупателя:

4.2.1. Покупатель обязуется уплатить Продавцу цену продажи в сумме, указанной в пункте 3.1 настоящего договора.

## 5.  ПРОЧИЕ УСЛОВИЯ.

5.1.  Продавец в дополнение к цене продажи согласно пункту 3.1 настоящего договора обязуется выпустить и передать Покупателю гарантированный опцион на покупку 10,000,000 (десять миллионов) простых акций Продавца по цене на дату заключения контракта, а именно 25 (двадцать пять) центов США за акцию. 10,000,000 (десять миллионов) акций эквивалентны 5% авторизированного капитала Продавца, 5% доля и ее цена в размере $2,500,00.00 (два миллиона пятьсот тысяч) долларов США фиксируется для данного гарантированного опциона в авторизированном капитале Продавца независимо от количества авторизованных акций на срок действия варранта в течение 12 месяцев с момента заключения настоящего договора.

5.2.  Стороны пришли к соглашению, что сумма оплаты доли согласно пункту 3.1 настоящего соглашения может быть использована Продавцом исключительно для исполнения обязательств по рабочей программе разведки блока Арысь согласно контракту 753 от 24 сентября 2001 г. Покупатель имеет право получать информацию от Продавца о расходовании средств, полученных по настоящему соглашению, до момента полного их использования.

5.3. Продавец полностью берет на себя все обязательства по исполнению контракта 753 и его дополнений перед государством и Покупателем.

5.4. Продавец обязуется в дальнейшем в случае отчуждения своей оставшейся доли в ТОО «Туран Энерпетролеум» третьим лицам обеспечить приобретение этим третьим лицом доли, принадлежащей Покупателю по цене, аналогичной цене покупки у Продавца и на тех же условиях. В случае невозможности покупки третьим лицом доли





EXHIBIT 4

Покупателя, Продавец обязуется приобрести долю Покупателю по цене сделки с третьим лицом, в случае продажи доли Продавца третьему лицу.

5.5. Отчуждение Товариществом права недропользования по контракту 753, в том числе использование в качестве залога, совершается с согласия Покупателя.

5.6. Настоящий договор представляет собой полный текст соглашения, достигнутого между Сторонами в отношении купли-продажи доли.

5.7. Все изменения и/или дополнения в настоящий договор действительны только в том случае, когда они совершены в письменном виде и подписаны уполномоченными представителями Сторон.

5.8. Во всем остальном, что прямо не предусмотрено настоящим договором, стороны руководствуются действующим законодательством Республики Казахстан.

5.9. Настоящий договор составлен и подписан в шести идентичных экземплярах, имеющих одинаковую юридическую силу.

## 6.   СРОК ДЕЙСТВИЯ ДОГОВОРА

6.1.   Настоящий договор вступает в силу с даты его подписания и действует до полного выполнения сторонами своих обязательств.

## 7.   ЮРИДИЧЕСКИЕ АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ ПРЕДСТАВИТЕЛЕЙ СТОРОН:

7.1.   Продавец: Туран Петролеум, Инк. (Turan Petroleum, Inc.), 940 South Coast Drive, Suite 100, Costa Mesa, CA 92626, USA. Регистрационный номер C7930-2001 (Невада). Tel. +1-717-754-6835, Fax +1-714-754-6539

7.2.   Покупатель: Азия Пасифик Ойл энд Газ (Asia Pacific Oil and Gas), 95 Wilton Road, Suite 3, London, SW1V 1BZ, UK. Регистрационный номер 050476 (Сейшельские острова). Tel. +44-(0)-845-527-8554, Fax +44-(0)-020-527-4259

**Продавец:**                                         **Покупатель:**

_____                    _____

Аскар Карабаев                                         Адильжан Джакишев
Председатель Совета Директоров          Директор

# ASIA PACIFIC OIL & GAS

95 Wilton Road, Suite 3, London, SWIV lBZ, United Kingdom
Tel: +44 (0) 845 527 8554  Fax: +44 (0) 020 527 4259

### Гарантийное письмо

г. Алматы                                           7 января 2009 года

Настоящее Гарантийное письмо является дополнением к контракту купли-продажи доли в уставном капитале от 7 января 2009 года между Asia Pacific Oil & Gas Ltd. и Корпорацией "Туран Петролеум, Инк." согласно пункту 3.2.1 вышеуказанного договора.

Гарантируем оплату суммы в размере $5,000,000.00 (пять миллионов долларов США) на счет ТОО "Туран Энерпетролеум" в течение трех банковских дней после получения регистрационных документов ТОО "Туран Энерпетролеум" с 20% участием (долей) нашей фирмы согласно пункту 3.1 договора купли-продажи доли от 7 января 2009 года между нашей фирмой и Корпорацией "Туран Петролеум, Инк.".

Вышеуказанные регистрационные документы должны иметь штамп официальной регистрации Министерства Юстиции, подтверждающие факт вступления нашей фирмы в право владения 20% уставного капитала ТОО "Туран Энерпетролеум".

Настоящее Гарантийное обязательство может быть уступлено Корпорацией "Туран Петролеум, Инк." любой третьей стороне. Asia Pacific Oil & Gas Ltd. обязуется оплатить сумму согласно пункту 3.1 договора купли-продажи доли от 7 января 2009 года такой стороне. Уступка оформляется путем совершения передаточной надписи с обратной стороне оригинала настоящего обязательства.



Адильжан Джакишев (Adilzhan Dzhakishev)
Директор





www.apoilgas.com

EXHIBIT 4

# Приложение номер 2 к договору

Купли-продажи доли в уставном капитале

ТОО "ТУРАН ЭНЕРПЕТРОЛЕУМ"

г. Алматы                                                    27 января 2009 года

Корпорация "Туран Петролеум, Инк", именуемая в дальнейшем "Продавец", в лице Президента Аскара Карабаева, действующего на основании решения Совета Директоров от 7 января 2008 года, с одной стороны,
и
Фирма "Азия Пасифик Ойл энд Газ", ЛТД. именуемая в дальнейшем "Покупатель", в лице директора Адильжана Джакишева, действующего на основании Устава, с другой стороны, совместно именуемые как "Стороны", а по отдельности, как указано выше или "Сторона", заключили настоящее приложение номер 2 к вышеуказанному договору о нижеследующем:

1. Стороны пришли к соглашению заменить понятие "авторизованный капитал" (authorized capital) в пункте 5.1 вышеуказанного договора на понятие "выпущенный капитал" (outstanding capital). Точное количество акций и их цена по отношению к выпущенному капиталу будут высчитаны на момент покупки акций из расчета 5% доли согласно пункту 5.1 за $2,500,000.00 (два с половиной миллиона долларов США)

2. Оплата по договору от 7 января 2009 года производится следующим образом:
   2.1. $600,000.00 (шестьсот тысяч долларов США) перечисляются на счет Туран Петролеум, Инк. в качестве оплаты за 20% долю в ТОО "Туран Энерпетролеум".
   2.2. $4,400,000.00 (четыре миллиона четыреста тысяч долларов США) перечисляются на счет Туран Петролеум, Инк. за право приобретения гарантированного опциона Туран Петролеум, Инк. на покупку 10,000,000 (десяти миллионов) простых акций Туран Петролеум, Инк. до 7 января 2010 года, по цене $0.25 долларов США за акцию.

3. Туран Петролеум, Инк. берет на себя обязательство сформировать и оплатить уставной капитал перерегистрированного ТОО "Туран Энерпетролеум" в размере $4,000,000.00 (четыре миллиона долларов США) следующим образом:
   3.1. Asia Pacific Oil & Gas, LTD. владееет 20% долей в ТОО"Туран Энерпетролеум".
   3.2. Туран Петролеум, Инк. владееет 80% долей в ТОО "Туран Энерпетролеум".

## ЮРИДИЧЕСКИЕ АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ ПРЕДСТАВИТЕЛЕЙ СТОРОН:

Продавец: Туран Петролеум, Инк. (Turan Petroleum, Inc.), 940 South Coast Drive, Suite 100, Costa Mesa, CA 92626, USA. Регистрационный номер C7930-2001 (Невада). Tel. +1-717-754-6835, Fax +1-714-754-6539

Покупатель: Азия Пасифик Ойл энд Газ, ЛТД. (Asia Pacific Oil and Gas, LTD.), 95 Wilton Road, Suite 3, London, SW1V 1BZ, UK. Tel. +44-(0)-845-527-8554, Fax +44-(0)-020-527-4259

Продавец:                                    Покупатель:

EXHIBIT 4

### Sale agreement of shares in the capital of "Turan Enerpetroleum" LLP

Almaty                                                                January 7, 2009

Corporation **Turan Petroleum, Inc.**, hereinafter referred to as" Seller ", represented by the Chairman of the Board of Directors of Askar Karabaev, acting on a decision of the Board of Directors on 7 January 2008, on the one hand,

and

Corporation **Asia Pacific Oil & Gas Ltd.**, hereinafter referred to as " Buyer ", represented by director Adilzhana Dzhakisheva, acting on the basis of the Charter, on the other hand,

collectively referred to as the "Parties", and individually as indicated above or "Party", concluded the present Agreement as follows:

### 1. SUBJECT OF THE AGREEMENT

1.1. Seller agrees to sell and the Buyer to purchase the 20% of the share capital of "Turan Enerpetroleum" LLP (hereinafter referred to as - Share) and pay the sale price for the mentioned Share on such terms and conditions specified in this agreement.

1.2. Ownership of the Purchaser on the Share arises from the date of registration in the Department of Justice of the Republic of Kazakhstan.

### 2. INFORMATION ABOUT "TURAN ENERPETROLEUM" LLP

2.1. "Turan Enerpetroleum" LLP registered by the Department of Justice, Almaty city July 8, 2004 - Certificate of registration number 63711-1910-TOO, hereinafter referred to as - "Partnership".

### 3. SALE PRICE.

3.1. Sale price for the share under this contract is $ 5 000.000,00 (five million) U.S. dollars.

3.2. Sale price indicated in p.3.1 of this contract shall be payable as follows:

3.2.1. By signing this contract the Buyer issue for the Seller Promissory Note for an amount under paragraph 3.1 of this contract, which is an annex to the present agreement.

3.2.2. The maturity date of Promissory Note referred to in paragraph 3.2.1 due within 3 banking days after the registration of ownership rights of the Buyer in accordance with paragraph 1.2 of this agreement. A third party may implement money transfer under this agreement. Buyer can assign Promissory Note to any third party.

EXHIBIT 5 

3.2.3. Register pursuant to paragraph 1.2, is carried out after obtaining permission of the interdepartmental commission of Ministry of Economy and Mineral Recourses and after refusal of State of execution of its preferential right to purchase the share in accordance with article 71 paragraph 3 of the Law on Mineral Resources. The obligation to obtain the aforementioned permits its curried by the Seller.

3.3. All costs associated with State re-registration of Partnership in connection with the changing composition of participants curried by the Partnership.

## 4. OBLIGATIONS OF THE PARTIES

4.1 Obligations of Seller:

4.1.1. The Seller is obliged to transfer the Share to the Buyer on the terms specified in this agreement;

4.1.2. The Seller guarantees to the Buyer that, at the time of the conclusion of this agreement the Share is not a subject to any mortgage or other encumbrance, is not under arrest, and Seller undertakes to immediately notify the Buyer in writing about the origins of claims of third parties in respect of Shares.

4.1.3. Seller agrees to comply with all conditions of this agreement in proper time.

4.2. Obligations of Buyer:

4.2.1. The buyer agrees to pay the Seller the sale price in the amount specified in paragraph 3.1 of this agreement.

## 5. OTHER CONDITIONS.

5.1. Seller, in addition to the selling price in accordance with paragraph 3.1 of this agreement undertakes to issue for the Buyer a guaranteed option to purchase 10.000.000 (ten million) ordinary shares of the Seller at the price on the date of the contract, namely the 25 (twenty five) cents per share. 10.000.000 (ten million) of shares is equivalent to 5% of the authorized capital of Seller, 5% and its share price of $ 2.500.000,00 (two million five hundred thousand) U.S. dollars is fixed for this guaranteed option in the authorized capital of Seller, regardless of the number of authorized shares for the duration of the option within 12 months from the conclusion of this agreement.

5.2. The parties agreed that the all sum of consideration in accordance with paragraph 3.1 of this Agreement must be used by Seller solely for the performance under the working program of exploration blocks under the contract Arys 753 dated  September 24, 2001. The Buyer has the right to receive information from the Seller on the expenditure of funds received by this agreement until they fully used.

EXHIBIT 5

5.3. Seller fully takes all the obligations under the contract 753 and its supplements before the State.

5.4. Seller agrees in the event of selling of its remaining shares in the "Turan Enerpetroleum" LLP to the any third parties to ensure the acquisition by this third person shares owned by the Buyer at a price similar to the purchase price from the Seller, and under the same conditions. If third party can't buy share of the Buyer, Seller agrees to buy share of the Buyer at a price of a transaction with a third person.

5.5. Selling or distribution of any rights under the contract 753, including use it as collateral, is committed with the consent of the Buyer.

5.6. This contract constitutes the entire agreement reached between the parties with respect to the sale of shares.

5.7. All changes and / or additions to this contract are valid only when they are committed to writing and signed by authorized representatives of the Parties.

5.8. In the rest, that is not expressly provided in this agreement, the parties are guided by the laws of the Republic of Kazakhstan.

5.9. This contract is drawn up and signed in six identical copies with equal legal force.

## 6. TERM OF AGREEMENT

6.1. This Agreement shall enter into force on the date of its signing and is valid until the full implementation by the parties of their obligations.

## 7. LEGAL INFORMATION, DETAILS AND SIGNATURES OF THE PARTIES:



## Annex No. 1 to the Sale agreement of shares
## in the capital of "Turan Enerpetroleum" LLP

### Promissory note

Almaty                                              January 7, 2009

This promissory note is in addition to Sale agreement of shares in the capital of "Turan Enerpetroleum" LLP, dated   January 7, 2009 between the Asia Pacific Oil & Gas Ltd. and the Turan Petroleum, Inc. pursuant to paragraph 3.2.1 above mentioned agreement.

We guarantee payment of the amount of $ 5,000,000.00 (five million U.S. dollars) to the "Turan Enerpetroleum" LLP account within three banking days after receiving the registration documents of "Turan Enerpetroleum" LLP with 20 % participation (share) of our Company under paragraph 3.1 of Sale agreement of shares in the capital dated January 7, 2009 between our company and the Turan Petroleum, Inc.

Registration documents should have the stamp of official registration of the Ministry of Justice confirming our ownership of 20% of the authorized capital of "Turan Enerpetroleum" LLP.

This promissory note may be assigned the Corporation by Turan Petroleum, Inc. to any third party. Asia Pacific Oil & Gas Ltd. undertakes to pay the amount under paragraph 3.1 of Sale agreement of shares in the capital dated January 7, 2009 to that party. The assignment is executed by performing the transfer inscription on the back side of the original obligation.

Adilzhan Dzhakishev
Director

EXHIBIT 5

### Annex No. 2 to the Sale agreement of shares
### in the capital of "Turan Enerpetroleum" LLP

Almaty                                                            January 27, 2009

Corporation **Turan Petroleum, Inc**., hereinafter referred to as" Seller ", represented by the Chairman of the Board of Directors of Askar Karabaev, acting on a decision of the Board of Directors on 7 January 2008, on the one hand,

and

Corporation **Asia Pacific Oil & Gas Ltd.**, hereinafter referred to as " Buyer ", represented by director Adilzhana Dzhakisheva, acting on the basis of the Charter, on the other hand,

collectively referred to as the "Parties" and individually as indicated above or "Party", have concluded this Annex No. 2 to the above contract as follows:

1. The parties agreed to replace the term "Authorized Capital"  in paragraph 5.1 of the above agreement on the term "Outstanding capital".

2. Payments under the contract from January 7, 2009 is as follows:
    2.1. $ 600,000.00 (six hundred thousand United States dollars) transferred to the account Turan Petroleum, Inc. as payment for a 20% share of the "Turan Enerpetroleum" LLP.
    2.2. $ 4,400,000.00 (four million four hundred thousand United States dollars) transferred to the account Turan Petroleum, Inc. for the acquisition of the right guaranteed option from Turan Petroleum, Inc. for the purchase of 10,000,000 (ten million) ordinary shares of Turan Petroleum, Inc. until 7 January 2010, at a price of $ 0.25 dollars per share.

3. Turan Petroleum, Inc. undertakes to establish and pay for charter capital of "Turan Enerpetroleum" LLP  the amount of $ 4,000,000.00 (four million U.S. dollars) as follows:
    3.1. Asia Pacific Oil & Gas, Ltd. is owner of 20% share of "Turan Enerpetroleum" LLP.
    3.2. Turan Petroleum, Inc is owner of 80% share of "Turan Enerpetroleum" LLP.

**LEGAL INFORMATION, DETAILS AND SIGNATURES OF THE PARTIES:**

EXHIBIT 5

**STOCK OPTION AGREEMENT, Turan Petroleum, Inc.**

| | |
|---|---|
| **Grantee:** | ASIA PACIFIC OIL & GAS LTD |
| **Number of Shares of Company Common Stock Underlying Option:** | 10,000,000 [TEN MILLION] OPTIONS TO COMMON SHARE |
| **Total Price:** | $0.25 PER SHARE |
| **Date of Grant:** | JANUARY 7, 2009 |

This Stock Option Agreement is entered into as of the 7st day of JANUARY , 2009 by and between Turan Petroleum, Inc., a Nevada Corporation, currently having its executive office at 940 South Coast Dr. Suite 100, Costa Mesa, CA 92626 (the "Company"), and ASIA PACIFIC OIL & GAS LTD (the "Grantee").

This Stock Option Award by Turan Petroleum Inc is a part fulfillment according to the section 5.1 of prior agreement dated January 7, 2009 between Asia Pacific Oil & Gas Ltd, and Turan Petroleum Inc regarding 20% stake in Turan EnerPetroleum LLP.

**RECITAL**

WHEREAS, the Company desires that Grantee shall provide consulting services to the Company and has determined that in order to reward the consultant for past efforts and to encourage the Consultant to perform additional services, the Company will grant to the Grantee an option to purchase shares of common stock of the Company.

1.  **STOCK OPTION**

    1.1. **GRANT OF STOCK OPTION.**  The Company hereby grants to Grantee, and Grantee hereby accepts, the right and option to purchase from the Company all or any part of the Number of Shares of Company Common Stock Underlying Options set forth above (the "Shares") at the Purchase Price Per Share set forth above on the terms and conditions stated herein (the "Option").  The Option granted hereunder is issued as a non-qualified option and is not intended to be an "Incentive Stock Option," as defined in Section 422 of the Internal Revenue Code of 1986, as amended (the "Code"), and is not issued under and Company stock option plan.  Grantee expressly acknowledges that the Option may create certain tax liabilities upon exercise and in certain other events.

TURAN    APOG

EXHIBIT 6 

1.2. **TERMS OF STOCK OPTION.** The Option shall be subject to the following terms and conditions:

    (a) Option Period. The Option shall not be exercisable after 5:00 p.m., Los Angeles time, on **JANUARY 6TH 2010** (the "Expiration Date"). The Option or portion thereof may be exercised only with respect to whole shares of common stock, par value $0.001 per share of the Company (the "Common Stock"). Notwithstanding Section 1.3 hereof or the provisions of any Agreement, the Board of Directors of the Company (the"Board") may in its sole and absolute discretion extend the time for the exercise of the Option.

    (b) Vesting. Subject to the limits set forth herein relating to the termination of the Grantee's directorship by the Company, this Option shall be deemed vested and thus exercisable by Grantee only to the extent of the following number of Shares commencing on the following dates:

| Numbers of Shares | First Date After Which Shares May Be Purchased |
| --- | --- |
| ALL | JANUARY 7TH 2009 |

    (c) Method of Exercise. The Option may be exercised (i) by giving written notice to the Company specifying the number of whole shares of Common Stock to be purchased and accompanied by payment thereof in full (or arrangements made for such payment to the Company's satisfaction) in cash, and (ii) by executing such documents as the Company may reasonably request. No certificate representing Common Stock shall be delivered until the full purchase price therefore has been paid (or arrangement made for such payment to the Company's satisfaction).

    (d) The total number of options will be up to 5% of the total outstanding shares of the company for a period of 12 months from the date of this agreement.

**1.3 TERMINATION OF CONSULTANCY**

    (a) Total Disability. If Grantee's consultancy with the Company terminates by reason of Total Disability, the Option shall be exercisable only to the extent that such option is exercisable on the effective date of Grantee's termination of consultancy and may thereafter be exercised by Grantee (or Grantee's legal representative or similar person) until and including the Expiration Date. "Total Disability" shall mean the inability of Grantee substantially to perform Grantee's duties and responsibilities as a consultant for a continuous period of of six months,

    (b) Death. If Grantee's consultancy with the Company terminates by reason of death, the Option shall be exercisable only to the extent that the Option is exercisable on the date of Grantee's death and may thereafter be exercised by Grantee's executor, administrator, legal representative, beneficiary or similar person until and including the Expiration Date.

    (c) Other Termination. If Grantee's consultancy with the Company is terminated by the Grantee or the Company for any reason other than Total Disability or death, the Option shall be exercisable only to the extent that the Option is exercisable on the effective date of the


EXHIBIT 6




TURAN   APOG

Grantee's termination of consultancy and may thereafter be exercised by Grantee (or Grantee's legal representative or similar person) until and including the Expiration Date.

## 2.  TRANSFERABILITY

### 2.1  NON-TRANFERABILITY.
The Option may  not be given, granted, sold, exchanged, pledged, assigned, hypothecated or otherwise encumbered or disposed of by Grantee, other than by will or the laws of descent and distribution or pursuant to beneficiary designation procedures set forth in Section 2.2.  Upon any attempt to so sell, transfer, assign, pledge, hypothecate, encumber or otherwise dispose of the Option hereunder, the Option and all rights thereunder shall immediately become null and void.  Except to the extent permitted by the foregoing sentence, the Option may be exercised during Grantee's lifetime only by Grantee or Grantee's legal representative or similar person.  The Company retains the right to allow the Grantee to transfer all or part of the Option to another party (the "Transferee") approved by the Company in a writing to the Grantee and the Transferee, in which case the Transferee shall assume all the rights and obligations of the Grantee.

### 2.2  DESINGATION OF BENEFICIARY.
(a) Grantee may file with the Company a written designation of one or more persons as Grantee's beneficiary or beneficiaries (both primary and contingent) in the event of Grantee's death.  To the extent an outstanding option granted hereunder is exercisable, such beneficiary or beneficiaries shall be entitled to exercise such option.

(b) Each beneficiary designation shall become effective only when filed in writing with the Company during Grantee's lifetime on a form prescribed by the Company.  The spouse of a married Grantee domiciled in a community property jurisdiction shall join in any designation of a beneficiary other than such spouse.   The filing with the Company of a new beneficiary designation shall cancel all previously filed beneficiary designations.

(c) if a Grantee fails to designate a beneficiary, or if all designated beneficiaries of a Grantee predecease Grantee, then each outstanding option hereunder held by such Grantee, to the extent exercisable, may be exercised by such Grantee's executor, administrator, legal representative or similar person.

## 3.  SALE OR DISPOSITION OF SHARES

### 3.1 RESTRICTIONS ON SHARES.
The Option shall be subject to the requirements that if at any time the Company determines that the listing, registration or qualification of the shares of Common Stock subject to the Option upon any securities exchange or under any law, or the consent or approval of any governmental body, or the taking of any other action is necessary or desirable as a condition of, or in connection with, the delivery of shares thereunder, such shares shall not be delivered unless such listing, registration, qualification, consent, approval or other action shall have been effected or obtained, free of any conditions not acceptable to the Company. The Company may require that certificates evidencing  shares of Common Stock delivered pursuant to the Option bear a legend indicating that the sale, transfer or other disposition thereof by the holder is prohibited except in compliance with the Securities Act of 1933, as amended, and the rules and regulations thereunder.

TURAN   APOG


EXHIBIT 6

## 4. ADJUSTMENTS

**4.1 ADJUSTMENT.**  In the event of any stock split, stock dividend, recapitalization, reorganization, merger, consolidation, combination, exchange of shares, liquidation, spin-off or other similar change in capitalization or event, or any distribution to holders of Common Stock other than a regular cash dividend, the number and class of securities subject to the Option and the purchase price per security shall be appropriately adjusted by the Company, without an increase in the aggregate purchase price.  The decision of the Company regarding any such adjustment shall be final and binding.

## 5. EFFECT OF CERTAIN TRANSACTIONS

**5.1 REORGANIZATION; MERGER; SALE OF ASSETS.**  In the event that the Company enters into an agreement

(a) to dispose of all or substantially all of its assets, in contemplation of the distribution of the net proceeds of such sale to the Company's shareholders, or

(b) to consummate a merger or consolidation in which the Company is not the surviving or resulting corporation, or in the event the persons who, as of the date hereof, hold 70% or more of the outstanding capital stock of the Company enter into an agreement to sell all of such stock (such distribution, merger, consolidation or sale being hereinafter referred to as a "Transaction"), then the Company shall provide, at its election made in its sole and absolute discretion, for one or more of the following; (i) for the Option, whether or not then exercisable, to be replaced with a comparable option to purchase shares of capital stock of a successor or purchasing corporation or parent thereof, or (ii) for the Option, whether or not then exercisable, to be assumed by a successor or purchasing corporation or parent thereof (and, in the event of such assumption, the Option shall continue to be exercisable, on the terms and subject to the conditions set forth herein, and in cumulative amounts at the times provided herein, but shall, from and after the consummation of such Transaction, be exercisable for the capital stock, cash and/or other property received by the common stockholders of the Company in such Transaction in an amount equal to what the holder of the Option would have received had he exercised the Option immediately prior to the consummation of such Transaction), or (iii) for the Option, whether or not then exercisable, to become exercisable during such period prior to the scheduled consummation of such Transaction as may be specified by the Company.  In the event the Company elects to cause the portion of the Option not then exercisable to become exercisable prior to such Transaction (such portion the "Accelerated Portion"), any exercise of the Accelerated Portion shall be conditioned upon, and shall be effective only concurrently with, the consummation of such Transaction; and if such Transaction is not consummated, the exercise of the Accelerated Portion shall be of no further force or effect (and Grantee may elect, with respect to the exercise during such period of the Option that was otherwise exercisable, to so condition such exercise upon the consummation of the Transaction).  If the Option or Accelerated Portion is not exercised prior to the consummation of such Transaction (and which is not being assumed by a successor or purchasing corporation or parent thereof), the Option or Accelerated Portion shall terminate and be of no further force or effect as of consummation of such Transaction,

TURAN     APOG

EXHIBIT 6

5.2 **POOLING TRANSACTIONS.** If Grantee is subject to Section 16 of the Exchange Act (i) notwithstanding the exercise periods set forth in Sections 1.2 and 1.3, and (ii) notwithstanding the Expiration Date, in the event the Company is involved in a business combination that is intended to be treated as a pooling of interests for financial accounting purposes (a "Pooling Transaction") or pursuant to which Grantee receives a substitute option to purchase securities of any entity, including an entity directly or indirectly acquiring the Company, then the Option (or option in substitution thereof) shall be exercisable to the extent set forth herein until and including the latest of (x) the date set forth pursuant to the then applicable paragraph of Section 1.2, 1.3 or the Expiration Date, (y) the date which is six months and one day after the consummation of such business combination and (z) the date which is ten business days after the date of expiration of any period during which Grantee may not dispose of a security issued in the Pooling Transaction in order for the Pooling Transaction to be accounted for as a pooling of interests.

6. **MISCELLANEOUS**

6.1 **NO RIGHT OF EMPLOYMENT.** The Option granted hereunder shall not confer upon Grantee any right to continued employment by the Company, any Subsidiary or any affiliate of the Company or affect in any manner the right of the Company, and Subsidiary or any affiliate of the Company to terminate the consultancy of Grantee at any time without liability hereunder.

6.2 **RIGHTS AS A STOCKHOLDER.** Grantee shall not have any rights as a stockholder of the Company with respect to any shares of Common Stock which are subject to the Option until Grantee becomes a stockholder of record with respect to such shares of Common Stock.

6.3 **GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.

IN WITNESS WHEREOF, the Company and Grantee have executed this Agreement as of the date set forth above.

TURAN PETROLEUM, INC.

By: _____

940 SOUTH COAST DR. STE 100          Naum Voloshin, COO
COSTA MESA, CA 92626                 TURAN PETROLEUM INC.

                    **GRANTEE:**

95 Wilton Road, Suite 3, London,     ASIA PACIFIC OIL & GAS LTD
SW1V 1BZ, United Kingdom
Tel: +44 (0) 845 527 8554
Fax: +44 (0) 020 527 4259

*[Seal: Asia Pacific Oil & Gas Ltd   50476   Seychelles]*

Page 5 of 5 Turan Petroleum Stock Option Agreement – Rev: 3/24/08

TURAN    APOG

EXHIBIT 6