Rick Augustini (State Bar No. 160934)
LAW OFFICE OF RICK AUGUSTINI
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Phone:          (949) 721-6624
Fax:             (949) 721-6623
E-Mail:         rick.augustini@gmail.com

Attorneys for Interpleader Counter-Defendant
TURAN PETROLEUM, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—SOUTHERN DIVISION

| | |
|---|---|
| KAZENERCOM TOO, et al., | Case No. 8:09-cv-00059-JVS-MLG |
| Plaintiffs, | Assigned to Hon. James V. Selna |
| v. | **COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| TURAN PETROLEUM, INC., et al., | |
| Defendants. | Pretrial Conference:     April 8, 2010 |
| | Time:                           8:30 a.m. |
| AND RELATED INTERPLEADER ACTION. | Courtroom:                  10C |
| | Trial Date:                   April 20, 2010 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      SUMMARY OF ARGUMENT.................................................................1

II.     SUMMARY OF CLAIMS/ISSUES .......................................................4

    A.     Wells Fargo Bank, N.A. Is Not Asserting Any Claims
        In This Action ..........................................................................4

    B.     Turan's Claim and Defenses in This Action...............................4

    C.     Issues Remaining to be Tried .......................................................10

III.    EVIDENTIARY ISSUES ....................................................................11

    A.     The Admissibility of Undisclosed Evidence ...............................11

    B.     Admissibility of Undisclosed Experts.........................................11

    C.     Other Evidentiary Issues ...............................................................12

        1.     The Bektayev Counter-Defendants Have
            Failed to Adequately Disclose Their Trial
            Exhibits Despite Repeated Requests as of
            April 7, 2010 .......................................................12

        2.     The Bektayev Counter-Defendants Have
            Failed to Adequately Disclose Their Trial
            Witnesses Despite Repeated Requests as of
            April 7, 2010 .......................................................14

IV.     ISSUES OF LAW    .........................................................................14

    A.     Does the Court Have Subject Matter Jurisdiction
        Over the Statutory Interpleader Action?......................................14

    B.     Is the Nevada Judgment Entitled to Preclusive
        Effect?        .........................................................................17

    C.     Does Due Process Permit the Court to Cancel the
        Shares of Shareholders Who Have Not Received

Notice of, Nor Appeared in, This Interpleader Action?...............19

D.    Should California Law Apply to the Internal Affairs
      of Turan Even Though it is a Nevada Corporation?...................20

E.    Did Trek Have a Legal Right to Vote at the
      February 19, 2009 Special Meeting and to Sign the
      Bektayev Consents Even Though it Had Not Been a
      Turan Shareholder of Record Since October of 2007?...............21

F.    Can a Majority of Turan Shareholders Call a Shareholder
      Meeting Under Nevada Law and Turan's Bylaws?...................22

G.    Was the Notice of Special Shareholder Meeting Signed
      By a Person Who Was Empowered to Execute It?.....................23

1

**TABLE OF AUTHORITIES**

2

**Page**

Cases

Aaron v. Merrill Lynch Pierce Fenner & Smith
   502 F.Supp. 2d 804 (N.D. Ind. 2007)..............................................................15

Alper v. United States
   190 F.R.D. 281 (W.D. Mass. 2000)..................................................................13

Bowers v. Harrah's Laughlin, Inc.
   215 P.3d 709 (Nev. 2009)..........................................................................17,18

Butler v. BioCore Medical Technologies, Inc.
   348 F.3d 1163 (10th Cir. 2003) .......................................................................13

Carey v. Piphus
   435 U.S. 247 (1985) ........................................................................................19

Cf. Istituto Bancario Italiano SpA v. Hunter Engineering Company, Inc.
   449 A.2d 210 (Del. 1982) ...............................................................................19

Clements v. Airport Authority of Washoe County
   69 F.3d 321 (9th Cir. 1995)..............................................................................18

Eklund v. Pinkey
   31 A.D. 3d 908 (N.Y. App. 2006).....................................................................23

Gros Ventre Tribe v. United States
   496 F.3d 801 (9th Cir. 2006).............................................................................15

Guild Wineries and Distilleries v. Whitehall Co., Ltd.
   853 F.2d 755 761 (9th Cir. 1988) .....................................................................17

Humanitarian Law Project v. U.S. Treasury Dept.
   578 F.3d 1133 (9th Cir. 2009) ..........................................................................15

Int'l Union of Operating Engn'rs v. County of Plumas
   559 F.3d 1041 (9th Cir. 2009) ..........................................................................15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES (cont'd)</u>

2

<u>Page</u>

<u>Cases (cont'd)</u>

3

4

Josephson v. Cosmocolor Corp.
    64 A.2d 35 (Del. Ch. 1949) ..........................................................23

5

6

LaSalle Nat. Bank v. Perelman
    82 F.Supp.2d 279 (D. Del. 2000)..................................................20

7

8

Mathews v. Eldridge
    424 U.S. 319 (1976) ......................................................................19

9

10

McAlister v. Essex Property Trust
    504 F.Supp.2d 903 (C.D. Cal. 2007) ............................................17

11

12

McLaney v. Fortune Operating Co.
    84 Nev. 491 (Nev. 1968).............................................................21

13

14

Page v. Walser
    213 P. 107 (Nev. 1923) ................................................................16

15

16

Pennwalt Corp. v. Centaur Partners
    710 F.Supp. 111 (E.D. Pa. 1989) .................................................23

17

18

State Farm Mut. Auto Ins. Co. v. Superior Court
    114 Cal.Rptr. 3d 56 (Cal. Ct. App. 2003).....................................20

19

20

Williamson v. Horizon Lines, LLC
    248 F.R.D. 79 (D. Maine 2008) ....................................................13

21

22

<u>Statutes</u>

23

24

28 U.S.C. § 1335.................................................................................6,15

25

California Code of Civil Procedure § 337..............................................9

26

California Corporations Code § 408.....................................................20

27

California Corporations Code § 443...................................................8,9

28

# TABLE OF AUTHORITIES (cont'd)

**Page**

Statutes (cont'd)

California Corporations Code § 2115.................................................................20

Federal Rules of Civil Procedure 26...............................................11,12,14
Federal Rules of Civil Procedure 37...............................................11
Federal Rules of Civil Procedure 45...............................................13

Federal Rules of Evidence 702........................................................11

Local Rule 16-5 .............................................................................14

Nevada Revised Statute 78.220......................................................8,9
Nevada Revised Statute 78.240......................................................19
Nevada Revised Statute 78.310......................................................22
Nevada Revised Statute 78.350......................................................21
Nevada Revised Statute 78.370......................................................23
Nevada Revised Statute 78.380......................................................24

Misc.

1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations
    § 25 ......................................................................................16

1 William Meade Fletcher, Fletecher Cyclopedia of the Law of Corporations
    § 1997...................................................................................23

# I.

## SUMMARY OF ARGUMENT

On March 26, 2005, Interpleader Counter-Defendant Turan Petroleum, Inc. ("Turan") entered into a *Confidential Asset Purchase Agreement* (the "APA") with Kazenercom TOO ("Kazenercom"), Yerkin Bektayev ("Bektayev"), and his partner Yedil Kassymov ("Kassymov").

Pursuant to the APA, Turan agreed to purchase 100% of the issued shares of Turan Enerpetroleum, TOO ("TEP"), a Kazakhstan limited liability company that owns an extremely valuable concession to explore for hydrocarbons in Kazakhstan (the "Concession").

As payment for his interest in TEP, Bektayev and Trek Resources, Inc. ("Trek"), a Nevada corporation that Bektayev claims to own, received 27 million shares of Turan common stock.

The APA contained the following provisions:

### First Recital

WHEREAS, Purchaser [Turan] has authorized One Hundred Million (100,000,000) shares of common stock, having a par value of $0.001 per share (the "Purchaser's Common Stock"), **of which approximately Fifty Nine Million (59,000,000) shares are anticipated to be issued and outstanding as of the closing date** of this Agreement and/or soon thereafter;

### Paragraph 4

**Capitalization and Additional Issuance of Shares**. Purchaser is authorized to issue 100,000,000 shares of Common Stock, being the only class of equity securities of Purchaser. **As of the date hereof approximately 33,000,000 shares of Common Stock of Purchaser are issued and outstanding.** (Concurrently with this Agreement Purchaser is also issuing warrant agreements to individuals instrumental in negotiating this Agreement; Said warrant agreements are attached hereto as Exhibit C.) There are no outstanding preemptive, conversion or other rights, options or agreements granted or issued by or binding upon Purchaser for the purchase

or acquisition of any shares of its capital stock, except with respect to the common Stock comprising the Purchase Price in accordance with this Agreement.  **Seller understands that its equity interest in Purchaser will be subject to dilution when additional shares or other equity interests are issued**.  Purchaser may enter into other contracts to acquire other assets, businesses, intangible property, product rights or technology in consideration for its shares or other forms of consideration.

## Paragraph 3

**Professional Assistance**.   Seller has been represented by independent legal counsel and financial advisor(s) of its own choosing, knowledgeable in U.S. corporate and securities laws.  Seller has had the full right and opportunity to consult with its counsel and, to the extent desired, it has availed itself of this opportunity.  **Seller and/or it representatives have carefully read and fully understand this Agreement**, and prior to Closing Seller and/or its representatives will carefully read and fully understand each of (a) the Articles of Incorporation of Purchaser, (b) the Bylaws of Purchaser, (c) the Shareholder Agreement of Purchaser.

Counter-Defendant Bektayev and Trek therefore had actual notice as of March 26, 2005 that:  (i) Turan already had issued approximately 33 million shares of stock; (ii) their shares would not give them a majority interest in the company; and (iii) their interest in Turan was subject to future dilution whenever Turan issued additional shares.

This means that no matter how many shares Turan subsequently issued, or is authorized to issue, Counter-Defendant Bektayev and Trek are (and have always been) **minority shareholders**.

On February 19, 2009, however, Counter-Defendant Bektayev and Trek purported to hold an unlawful special shareholder meeting in Almaty, Kazakhstan at which they purported: (i) to elect Yerkin Akkuzov, Yerkin Bektayev, Kanet Merimanov, Sabirgan Dushaliev and Igor Maximov (the "Bektayev Counter-Defendants") as directors of the company; (ii) to direct that Turan be dissolved and liquidated; and (iii) to authorize the transfer of the Concession to an entity owned and/or controlled by Bektayev.

Counter-Defendant Bektayev and Trek also executed three written shareholder consents (the "Bektayev Consents") confirming the election of the Bektayev Counter-Defendants and the other actions taken at the meeting.

Simply put, the Bektayev Counter-Defendants tried to steal the Concession, and over the next several months, the Bektayev Counter-Defendants purported to take several actions designed to aid their theft and damages Turan and its shareholders.

For example, on March 2, 2009, Counter-Defendant Merimanov, claiming to be acting as a director of Turan, sent Wells Fargo Bank, N.A. ("Wells Fargo") a letter on Turan letterhead advising Wells Fargo that the Bektayev Counter-Defendants had been elected as the new directors of the company and that all of Turan's prior officers and directors had been replaced.  Wells Fargo thereafter froze Turan's bank accounts, which contained $1,449,942.50 at the time--**all** of Turan's working capital (the "interpleaded funds").

On April 3, 2009, Wells Fargo commenced this statutory interpleader action by filing a counter-claim in interpleader and depositing <u>Turan's</u> money into the Court's registry, which action the Bektayev Counter-Defendants have yet to answer.

The ultimate resolution of this interpleader action is pre-ordained:  the Court will award Turan the interpleaded funds because no one disputes that the money actually belongs to the company.  <u>See</u> *Plaintiffs' Memorandum of Contentions of Fact and Law*, Dkt. No. 335, p. 2.

The real factual and legal issue in this case is whether the Bektayev Counter-Claim Defendants constitute Turan's lawful board of directors, which <u>exact</u> issue the Nevada district court **fully and finally adjudicated** in <u>Luberski, Inc., et al. v. Turan Petroleum, Inc.</u>, Case No. 09 OC 00355 1B, First Judicial District of the State of Nevada in and for Carson City (the "Nevada Action").

On <u>April 2, 2010</u>, the Nevada district court entered its *Findings of Fact, Conclusions of Law, Order Granting Summary Judgment, and Judgment* by which it

1 entered a  final declaratory judgment that: (i) Bektayev and Trek are not the majority

2 shareholders of Turan; (ii) the February 19, 2009 special shareholder meeting <u>and</u> the

3 Bektayev Consents are void and of no legal effect; (iii) the Bektayev Counter-Defendants

4 are not directors of Turan; and (iv) the Bektayev Counter-Defendants have absolutely no

5 authority to act on the company's behalf (the "Nevada Judgment").  The Nevada district

6 court also entered a permanent injunction prohibiting Turan from recognizing the

7 Bektayev Counter-Claim Defendants as the company's directors, among other things.

8      The Court therefore is obligated to recognize the Nevada Judgment, give the

9 Nevada Judgment preclusive effect, preclude the Bektayev Counter-Claim Defendants

10 from re-litigating the issues decided therein and award the interpleaded funds to Turan.

11                              **II.**

12                    **SUMMARY OF CLAIMS/ISSUES**

13      **A.**      <u>**Wells Fargo Bank, N.A. Is Not Asserting Any Claims In This Action.**</u>

14      The Court discharged Wells Fargo from the instant interpleader action on April 22,

15 2009, which means it is not asserting any claims in this action.

16      **B.**      <u>**Turan's Claim And Defenses In This Action.**</u>

17

18      **Claim No. 1:**   ***The Bektayev Counter Defendants Were Not Elected By A***

19 ***Majority Of Turan Shareholders In Accordance With Nevada Law, Which Means***

20 ***They Are Not Directors Of Turan And That They Have No Authority To Act Of Behalf***

21 ***Of The Company Or Control Its Assets.***

22

23      The elements required to establish Turan's claim are:

24           •      Bektayev and Trek did not own a majority of Turan's shares when

25                  they attended the February 19, 2009 special shareholder meeting or

26                  when they executed the Bektayev Consents.

27                              **OR**

28

---

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

- The February 19, 2009 special shareholder meeting was not properly noticed and called according to Nevada Law; and

- At the time the Bektayev Consents were executed, Trek Resources, Inc. ("Trek"), a Nevada corporation that Counter-Defendant Bektayev claims to own, was not a shareholder of record of Turan and, therefore, had no legal right to cast a vote to elect directors under Nevada law.

(c)   In brief, the key evidence Turan relies on to establish its claim is:

- The March 26, 2005, *Confidential Asset Purchase Agreement* between Turan, Kazenercom TOO, Yerkin Bektayev, and Yedil Kassymov;

- Turan's control book ledger, which demonstrates the total number of Turan shares issued and outstanding at particular points in time;

- Turan's stock transaction ledger;

- Turan's shareholder ledger;

- Turan's Bylaws;

- The February 4, 2009, *Notice of Special Meeting of Shareholders Convened by Majority Shareholders* that purported to call a special meeting of Turan shareholders in Almaty, Kazakhstan on February 19, 2009;

- The *Written Consent of Stockholders of Turan Petroleum, Inc.* dated February 4, 2009, which was signed by Bektayev and Trek;

- The *Minutes of the Meeting of the Stockholders of Turan Petroleum, Inc.* dated February 19, 2009;

- The *Action by Written Consent, Confirmation and Ratification by Majority Stockholders in Turan Petroleum, Inc.*, dated May 7, 2009, which was signed by Bektayev and Trek;

- The *Written Consent of the Stockholders of Turan Petroleum, Inc.*, dated July 2, 2009, which was signed by Bektayev and Trek;
- The Nevada district court's February 16th, 2010, *Order – The Bektayev Board has No Authority to Act as the Board of Directors of Turan*; and
- The Nevada district court's *Findings of Fact, Conclusions of Law, Order Granting Summary Judgment, and Judgment.*

**Affirmative Defense No. 1:** *The Court Lacks Subject Matter Jurisdiction Under 28 USC § 1335.*

The Court lacks subject matter jurisdiction over this action because the parties agree that the interpleaded funds are the property of Turan, and the Bektayev Counter Defendants do not claim to be entitled to the funds in their individual capacity.

(b)    The elements required to establish this affirmative defense are:

- The amount of the interpleaded funds is less than $500;

**OR**

- There are less than two adverse claimants to the interpleaded funds;

**OR**

- The adverse claimants are not of diverse citizenship.

(c)    In brief, the key evidence Turan relies on to establish this affirmative defense is:

- The Bektayev Counter Defendants have admitted that Turan owns the interpleaded funds; and
- The Bektayev Counter Defendants have not pleaded any affirmative claims in this interpleader action that, if successful on the merits at

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

trial, would entitle them in their individual capacity to ownership or possession of the interpleaded funds.

**Affirmative Defense No. 2:**  *The Bektayev Counter Defendants Are Barred By The Doctrine Of Issue Preclusion From Re-Litigating Issues Determined In The Nevada Action.*

Within the last several days, the Nevada district court issued a final declaratory judgment that the Bektayev Counter-Claim Defendant are not the lawfully elected directors of Turan because Bektayev and Trek are not the majority shareholders of Turan and the February 19th Special Meeting and the Bektayev Consents are void and of no legal effect.  The Bektayev Counter Defendants are barred by the doctrine of issue preclusion from re-litigating these issues in this case.

(b)     The elements required to establish this affirmative defense are:

- An issue in this case is identical to an issue decided in the Nevada Action;

- The Nevada Judgment was final and on the merits;

- The Bektayev Counter Defendants were a party to the Nevada Action or in privity with a party in the prior case; and

- The subject issue was actually and necessarily litigated in the Nevada Action.

(c)     In brief, the key evidence Turan relies on to establish this affirmative defense is:

- The Bektayev Counter Defendants have admitted that Turan owns the interpleaded funds; and

- The Bektayev Counter Defendants have not pleaded any affirmative claims in this interpleader action that, if successful on the merits at

7

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    trial, would entitle them in their individual capacity to ownership or

2    possession of the interpleaded funds.

3

4    **Affirmative Defense No. 3**: *As A Matter Of Law, No Shares Can Be Cancelled*

5    *For Non-Payment Of A Subscription Unless And Until Turan Complies With*

6    *Appropriate Statutory Procedures.*

7

8        The Bektayev Counter Defendants argue that Turan is only authorized to issue 50

9    million shares of stock.  Even assuming for the sake of argument that they are correct,

10   Bektayev and Trek still do not control a majority of Turan's shares.  Of the 27 million

11   shares that Bektayev claims to control, only 12,131,195 were issued from the Turan's first

12   50 million authorized shares. In recognition of this fact, the Bektayev Counter Defendants

13   have argued that the Court should retroactively cancel all of the shares issued before

14   Bektayev and Trek received their shares because, they allege, the subject shareholders

15   failed to pay the consideration due under their respective subscription agreements.

16       Pursuant to Section 78.220 of the Nevada Corporate Code, if a subscriber defaults

17   under a subscription agreement, the corporation may recover the amount owed by

18   bringing a collection lawsuit or by selling the subscriber's shares at public auction.

19   N.R.S. 78.220(2) (West 2009).  However, "[no] penalty causing a forfeiture… of stock

20   for which a subscription has been signed … may be declared against any subscriber

21   unless the amount due remains unpaid for 30 days after written demand." Id.  Even then,

22   the subscriber's shares may not be cancelled unless: (i) a bidder does not purchase the

23   subscriber's shares at public auction; or (ii) the corporation does not collect the defaulted

24   amount by an action at law.  NRS 78.220(3) (West 2009).

25       To the extent that the Bektayev Counter Defendants contend that California law

26   should be applied to the internal affairs of Turan, the California Corporations Code

27

28

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

requires a similar procedure to recover unpaid subscriptions.  Cal. Corp. Code § 443 (West 2009).

It therefore follows that before any Turan shares may be cancelled based upon an unpaid subscription, Turan must first follow the required statutory procedures to collect the outstanding obligation.

(b)     The elements required to establish this affirmative defense are:

- Turan has not complied with the provisions of N.R.S. 78.220; and
- To the extent applicable, Turan has not complied with the provisions of Cal. Corp. Code § 443.

(c)     In brief, the key evidence Turan relies on to establish this affirmative defense is:

- The trial testimony of Naum Voloshin, Turan's corporate secretary.
- The trial testimony of Yerkin Bektayev.

**Affirmative Defense No. 4:** *The Bektayev Counter Defendants Are Barred By The Statute Of Limitations From Seeking To Cancel Any Turan Shares Issued Prior To August 22, 2005.*

Pursuant to Section 78.745 of the Nevada corporate code, "no action shall be brought by the corporation against any stockholder for any unpaid subscription unless [brought] within 2 years after the debt becomes due…."  Bektayev and Trek had received all of their Turan shares by August 22, 2005.  Therefore, any suit to collect unpaid subscriptions for shares purchased prior to August 22, 2005, should have been brought by Turan no later than August 22, 2007 and is, therefore, time-barred.

Further, to the extent that the Bektayev Counter Defendants claim that California law and not Nevada laws should be applied, the claim is still time-barred. Pursuant to Section 337 of the California Code of Civil Procedure, a claim based upon a written

contract must be brought within four years. Cal. C.C.C.P. § 337 (West 2010). Therefore, even under California law, any suit to collect unpaid subscriptions for shares purchased prior to August 22, 2005, should have been brought by Turan no later than August 22, 2009, and is, therefore, time-barred.

(b)     The elements required to establish this affirmative defense are:

- The shares issued prior to August 22, 2005, were issued pursuant to a subscription.

- The debt arising from any alleged unpaid subscriptions accrued prior to the applicable statute of limitations; and

- The claim to enforce the alleged unpaid subscription was not brought by Turan prior to the expiration of the applicable statute of limitations.

(c)     In brief, the key evidence Turan relies on to establish this affirmative defense is:

- Subscription agreements between Turan and the shareholders who purchased the first 50 million authorized shares issued by Turan;

- Corporate minutes and share certificates evidencing the issuance of the first 50 million authorized shares issued by Turan;

- Turan's control book ledger that demonstrates the total number of Turan Shares issued and outstanding at particular points in time; and

Turan's stock transaction ledger.

**C.    <u>Issues Remaining To Be Tried.</u>**

Turan contends that the following issues remain to be tried:

- Whether the Court has subject matter jurisdiction;

- Whether the claims of Yerkin Akkuzov, Sabirgan Dushaliev and Igor Maximov are properly before the Court;

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

- Whether the doctrines of collateral estoppel and/or res judicata require the Court to disburse the interpleaded funds to Turan;
- Whether the Court has the power to "cancel" any outstanding shares, including those belonging to shareholders who are not before the Court;
- Whether the statute of limitations acts as a bar;
- Whether the Bektayev Counter Defendants have satisfied the statutory prerequisites to "cancel" any outstanding shares of stock; and

Whether the Bektayev Counter Defendants were elected by a majority of Turan shareholders in accordance with Nevada law.

## III.

## EVIDENTIARY ISSUES

Turan anticipates the Court will need to resolve the following evidentiary issues will need to be resolved prior to or at trial:

### A.   The Admissibility of Undisclosed Evidence.

Neither party has made **any** Rule 26(a) disclosures. The Court therefore will need to determine what evidence, if any, the parties may introduce at trial.  Turan therefore contends that conducting a trial in this matter would be premature.

### B.   Admissibility of Undisclosed Experts.

Based upon the witness list filed by the Bektayev Counter-Defendants, it appears that they intend to call Robin Dow, Sabino di Paulo and Richard Barrier as "experts" at trial.  The Bektayev Counter-Defendants have not disclosed any expert witnesses or expert reports in this lawsuit in accordance with Fed. R. Civ. P. 26 (a)(2)(A) or Fed. R. Civ. P. 26 (a)(2)(B).  It is Turan's position that because they failed to comply with the requirements of Rule 26(a), the Bektayev Counter-Defendants are not permitted to introduce any expert reports as evidence at trial.  See, Fed. R. Civ. P. 37 (c)(1)(West

2010).   Turan reserves any evidentiary objection it may have related to such expert Testimony pursuant to F.R.E. 702.

### C.  Other Evidentiary Issues.

#### 1.  *The Bektayev Counter-Defendants Have Failed To Adequately Disclose Their Trial Exhibits Despite Repeated Requests As Of April 7, 2010.*

To date, the Bektayev Counter-Defendants have failed and refused to identify the vast majority of the specific documents they intend to use as trial exhibits, i.e., they merely have designated broad categories of documents that may be introduced.

This practice does not comply with Fed.R.Civ.P. 26(a)(3)(A)(iii) or Local Rule 16-1.1 ("Not later than twenty-one (21) days before the Final Pretrial Conference, all parties shall file a joint list of exhibits containing the information required by Fed.R.Civ.P. 26(a)(3)(A)(iii). The exhibits shall be listed in numerical order").

Turan repeatedly has requested in writing over the past several days that the Bektayev Counter-Defendants rectify this failure, but counsel for the Bektayev Counter-Defendants has taken the position that they do not need to provide any more detail because the documents were included among +/- 4,000 documents they claim to have produced.

In other words, counsel for the Bektayev Counter-Defendants has claimed that Turan has to fish through the +/- 4,000 documents in order to figure out which documents correspond to their exhibits.

Because Turan has absolutely no idea what documents fall within these categories, it has no way to determine what additional evidentiary issues may arise or what objections may be appropriate to make.

Turan therefore reserves the right to raise and address additional evidentiary issues and objections once the Bektayev Counter-Defendants identify specific documents they intend to use as trial exhibits.

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Turan also objects to any exhibit obtained for the first time by the Bektayev Counter-Defendants pursuant to a trial subpoena.  Turan believes that (1) the Bektayev Counter-Defendants have served or intend to serve approximately thirty-five trial subpoenas on officers, directors, shareholders and others associated with Turan purporting to require the recipients to bring with them to trial documents related to Turan, including subscription agreements, payment records, correspondence and other documents; and (2) all of the trial subpoenas served by the Bektayev Counter-Claim Defendants were served after the January 5, 2010 discovery cut-off in this case and seek information that could have been obtained during discovery.

The use of a subpoena duces tecum, even when issued as part of a trial subpoena, is a form of discovery and, therefore, is subject discovery deadlines.  Williamson v. Horizon Lines, LLC, 248 F.R.D. 79, 83 (D. Maine 2008) ("…[T]here is a relationship between Rule 26 and Rule 45 and 'parties should not be allowed to employ a subpoena after a discovery deadline to obtain materials from third parties that could have been produced before discovery'"); see also, Alper v. United States, 190 F.R.D. 281, 283 (W.D. Mass. 2000)(it is improper to use a trial subpoena to obtain after the discovery cut-off materials that could have been produced during discovery).

It therefore is improper for the Bektayev Counter-Defendants to use trial subpoenas to conduct discovery that they should have (and could have) completed prior to the January 5, 2010 discovery cut-off.

This is especially true where, as here, the Bektayev Counter-Defendants failed to provide notice to Turan prior to serving the trial subpoenas duces tecum on third parties as required by Rule 45.  Fed. R. Civ. P. 45 (b)(1) (West 2010); see also, Butler v. BioCore Medical Technologies, Inc., 348 F. 3rd 1163, 1173 (10th Cir. 2003)(the purpose of the notice requirement under Rule 45 is to give opposing parties an opportunity to object and, therefore, notice must be given well in advance of the production date).  The Bektayev

Counter-Defendants still have not provided Turan with courtesy copies of the subpoenas after they were we served.

Turan therefore intends to file motions to quash as soon it finds out what subpoenas the Bektayev Counter-Defendants served.

### 2. The Bektayev Counter-Defendants Have Failed To Adequately Disclose Their Trial Witnesses Despite Repeated Requests As Of April 7, 2010

To date, the Bektayev Counter-Defendants have failed and refused to identify the any of their trial witnesses in the manner required by Fed. R. Civ. P. 26(a)(1)(A)(i) or (a)(3)(A)(i) or Local Rule 16-5 ("Each party shall serve and file under separate cover, at the same time as the Memorandum of Contentions of Fact and Law, a witness list containing the information required by F.R.Civ.P. 26(a)(3)(A). An asterisk shall be placed next to the names of those witnesses whom the party may call only if the need arises"). Turan repeatedly has requested in writing over the past several days that the Bektayev Counter-Defendants rectify this failure, but counsel for the Bektayev Counter-Defendants has refused, taking the position that they do not need to provide any more detail because the witnesses are "hostile" witnesses. Turan suspects what is really going on, however, is the Bektayev Counter-Defendants served dozens of legally invalid subpoenas (that they never provided to Turan) that they are hoping cause unwitting witnesses to appear and/or produce documents they have no obligation to produce.

### IV.

### ISSUES OF LAW

The following legal issues will need to be resolved prior to or at trial:

### A. Does The Court Have Subject Matter Jurisdiction Over This Statutory Interpleader Action?

The Court lacks subject matter jurisdiction, and the proper venue is state court in Nevada.

1    The Court has a continuing obligation to assess jurisdiction throughout the course

2  of a proceeding.  Humanitarian Law Project v. U.S. Treasury Dept., 578 F. 3d 1133,

3  1141, FN 6 (9th Cir. 2009)(rejecting argument that it was improper for district court to

4  consider jurisdictional issue on a motion to reconsider); see also, Gros Ventre Tribe v.

5  United States, 496 F.3d 801, 815 (9th Cir. 2006).   A party may raise jurisdictional

6  challenges at any time during a proceeding. Int'l Union of Operating Engn'rs, v. County

7  of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009).

8    The only remaining claim is the counter-claim in interpleader filed by Wells Fargo

9  against Turan and the Bektayev Counter Defendants, which means 28 USC section 1335

10  is the only possible basis for subject matter jurisdiction.

11    Under 28 U.S.C § 1335, a district court only has original jurisdiction over a civil

12  interpleader action if, among other things, there are: (i) two or more adverse claimants to

13  a particular fund or property; (ii) of diverse citizenship; (iii) who claim or may claim to be

14  "entitled" to such fund or property. 28 USC § 1335 (West 2010); Aaron v. Merrill Lynch

15  Pierce Fenner & Smith, 502 F. Supp.2d 804, 808 (N.D. Ind. 2007).

16    In the context of account funds, interpleader is appropriate where two parties claim

17  possession of the same funds held by a disinterested financial institution.  See e.g., Aaron,

18  502 F. Supp.2d at 809 (finding claim of ownership evidenced adversity for purpose of

19  statutory interpleader jurisdiction).

20    Here, however, the parties agree that there is only one claimant to the interpleaded

21  funds because there is no dispute as to who owns and is entitled to possess money, i.e.,

22  Turan Petroleum, Inc.

23    Both Turan and the Bektayev Counter Defendants agree that the interpleaded funds

24  belong solely to Turan.  See Plaintiffs' Memorandum of Contentions of Fact and Law,

25  Dkt. No. 335, p. 2, lines 19-20 ("The interplead funds belong to Turan and must be

26  controlled by the shareholders comprising the Bektayev Board to prevent waste and/or

27  conversion.").

28

1    While there is (or at least there was until the Nevada district court entered the
2    Nevada Judgment) a dispute over who has a right control the entity of Turan,  an internal
3    corporate governance dispute is fundamentally different than a dispute over the
4    ownership and possession of the corporation's bank account.

5    That is because no matter who ultimately succeeds in the governance dispute, the
6    corporation's bank account remains throughout the sole and exclusive property of the
7    corporation itself.

8    It is black letter corporate law that the property acquired by a corporation is, in law,
9    the property of the corporation as a distinct and separate entity:

10    It is generally accepted that the corporation is an entity distinct from
11    its shareholders with rights and liabilities not the same as theirs individually
12    and severally.  Likewise the corporation and its directors and officers are
13    similarly not the same personality. It is a practical convenience to consider
14    the corporation as a legal personality capable of …possessing real and
15    personal property in its own name…in much the same manner as a natural
16    person acting through agents of its own selection.

17    1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations § 25 (2010);
18    see also Page v. Walser, 213 P. 107, 110 (Nev. 1923).

19    As Wells Fargo made clear in its *Counter-Claim in Intervention,* the Bektayev
20    Counter Defendants never have claimed a right to personally possess the interpleaded
21    funds in their individual capacity.  To the contrary, they have claimed they had a right to
22    direct the disbursement of Turan's funds as the company's board of directors.  See
23    *Counter-Claim of Wells Fargo in Interpleader*, (Dkt. No. 167), ¶¶ 12-13.

24    What is more, the Bektayev Counter Defendants never have filed an answer to the
25    *Counter-Claim in Intervention*, which means they have not asserted any affirmative claim
26    or cause of action that (even if the succeeded on the merits at trial) would give them a
27    direct personal interest in the interpleaded funds.

28

1    For these reasons, it therefore follows the Court lacks subject matter over this

2    interpleader action

3    **B.    Is The Nevada Judgment Entitled To Preclusive Effect?**

4    On April 2, 2010, the Nevada district court has issued a final declaratory judgment

5    determining that (i) Counter-Defendant Bektayev and Trek are not the majority

6    shareholders of Turan; (ii) the February 19, 2009, special shareholder meeting and the

7    Bektayev Consents are void; (iii) the Bektayev Counter-Defendants are not the lawfully

8    elected directors of Turan; and (iii) the Bektayev Counter-Defendants have no authority

9    to act on behalf of Turan. It is Turan's position that under the doctrine of collateral

10   estoppel or issue preclusion, the Bektayev Counter-Defendants are now prohibited from

11   re-litigating in this case the issues previously decided by the Nevada district court.

12   Where an issue has been actually litigated and was necessary to the judgment in a

13   prior litigation between the same parties or their privies, the issue may not be re-litigated

14   in a subsequent proceeding. <u>McAlister v. Essex Property Trust</u>, 504 F. Supp.2d 903, 907

15   (C.D. Calif. 2007). "The objective of collateral estoppel… is to cut down on expense to

16   and effort by litigants and courts by eliminating redundant litigation." <u>Id</u>. Importantly, it

17   is irrelevant which of the two subject lawsuits was filed first; it is the date of the judgment

18   not the date of filing that controls the application of issue preclusion principles. <u>Guild

19   Wineries and Distilleries v. Whitehall Co., Ltd.</u>, 853 F. 2d 755, 761 (9th Cir. 1988).

20   In determining the preclusive effect of a state court judgment, federal courts must

21   apply the rules chosen by the state from which the judgment is taken. <u>McAlister</u>, 504

22   F.Supp.2d at 909.  Therefore, Nevada law determines the preclusive effect of the Nevada

23   Judgment. Under Nevada Law, issue preclusion requires that: (i) an issue is identical; (ii)

24   the initial ruling was final and on the merits; (iii) the party against who the judgment is

25   asserted was a party or in privity with a party in the prior case; and (iv) the issue was

26   actually and necessarily litigated in the prior proceeding.  <u>Bowers v. Harrah's Laughlin,</u>

27

28

1  Inc., 215 P.3d 709, 718 (Nev. 2009). The Nevada Judgment satisfies each of the forgoing

2  requirements.

3    First, the Bektayev Counter-Defendants cannot dispute that the issues in this

4  interpleader action are identical to those adjudicated in the Nevada Action; they admitted

5  as much in numerous court filings in the Nevada Action.

6    Second, the Bektayev Counter-Defendants cannot dispute that the Nevada

7  Judgment was a final judgment on the merits. An issue decided on a summary judgment

8  motion has preclusive effect for purposes of issue preclusion.  Bowers, 215 P.3d at 720.

9  Moreover, under Nevada law, a judgment is considered "final" for purposes of preclusion

10  even when an appeal may still be taken from it, i.e., an appeal from a judgment does not

11  suspend the effects of the judgment as res judicata.  Clements v. Airport Authority of

12  Washoe County, 69 F. 3d 321, 329, FN 7, (9th Cir. 1995) ("Nevada appears to follow the

13  general view – according finality to judgments notwithstanding opportunities to appeal.").

14    Third, while it is true that Bektayev Counter-Defendants never formally intervened

15  as a named party in the Nevada Action – electing instead to participate by asserting their

16  purported right to control the actual party defendant, Turan – there can be no dispute that

17  they were personally represented by counsel and actively involved in the proceedings.

18  They filed motions and other pleadings in the case, they stipulated to the entry of a mutual

19  preliminary injunction that personally bound them and participated through counsel in

20  numerous court hearings.  They are also now prosecuting an appeal of the Nevada district

21  court's February 16, 2010 *Order – The Bektayev Board has No Authority to Act as the*

22  *Board of Directors of Turan* before the Nevada Supreme Court.  Finally, the Nevada

23  Judgment expressly references the participation of the Bektayev Counter-Defendants in

24  the proceedings.

25    Fourth, the Bektayev Counter-Defendants cannot dispute that the issues of

26  whether they were lawfully elected as directors of Turan and their right to act on behalf of

27  the company were actually and necessarily litigated in the Nevada Action.  As reflected

28

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   by the Nevada Judgment, these were the **only issues** litigated before the Nevada district
2   court.

3        **C.**    **Does Due Process Permit The Court To Cancel The Shares Of**
4                **Shareholders Who Have Not Received Notice Of Nor Appeared In**
5                **This Interpleader Action***?*

6        Hoping to overcome Bektayev's clear lack of a majority interest, the Bektayev
7   Counter-Defendants are asking the Court to retroactively cancel the shares of other Turan
8   shareholders.   It is Turan's position that it would be unconstitutional for the court to
9   cancel the shares of shareholders who are not before it.

10        The United States Constitution guarantee that a person must receive due process
11   before the government may deprive him of his property." Carey v. Piphus 435 U.S.
12   247,259 (1985).   One of the core concepts of constitutional law, procedural due process
13   requires that a person have an opportunity to be heard at a meaningful time and in a
14   meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333 (1976).   Therefore, before
15   a court may constitutionally deprive a person of their property rights, due process requires
16   notice and an opportunity to be heard.

17        Shares of stock are personal property.  N.R.S. 78.240 (West 2004).   With the
18   exception of Bektayev, none of the shareholders who received Turan's first 50 million
19   authorized shares are before the Court.   Accordingly, the Court may not make a ruling
20   that adversely affects the rights or interest of Turan's shareholders unless and until they
21   receive notice of this proceeding and an opportunity to be heard. Cf. Istituto Bancario
22   Italiano SpA v. Hunter Engineering Company, Inc., 449 A.2d 210, 225 (Del.
23   1982)(shareholder is an indispensable party to an action to cancel the shareholder's
24   shares).   In the interim, the Court must treat each shareholder of record as if they have
25   always had and continue to have the right to vote their shares.  For to do otherwise, would
26   effectively deprive them of their property without due process of law.

27
28

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**D.      Should California Law Apply To The Internal Affairs Of Turan Even Though It Is A Nevada Corporation?**

As a Nevada corporation, <u>Nevada</u> law applies to all of Turan's internal affairs. "[T]he law applicable to a contract disputes … does not control claims relating to the internal affairs of [a] corporation." <u>State Farm Mut. Auto. Ins. Co. v. Superior Court</u>, 114 Cal. Rptr. 3d, 56, 67 (Cal. Ct. App. 2003) (quoting <u>LaSalle Nat. Bank v. Perelman</u>, 82 F. Supp.2d 279, 289 (D. Del. 2000).

Rather, California applies the "internal affairs doctrine" which recognizes that the law of a corporation's jurisdiction of incorporation governs matters peculiar to the relationship among or between the corporation and its shareholders. <u>Id</u>., at 64.   Under California law, "internal affairs" include matters related to the issuance of corporate shares and the holding of shareholder meetings. <u>Id</u>.

To the extent that Bektayev Counter-Defendants argue that Section 2115 of the California Corporate Code supersedes the foregoing authority, they are completely misguided.

As expressly recognized in the legislative comments to the statute, Section 2115 specifies **only certain chapters and sections** of the California Corporate Code that apply to a foreign corporation to the exclusion of the law of the jurisdiction in which it is incorporated.  West Cal. Corp. Code § 2115 (b).

Conspicuously absent from the provisions which can be applied to a foreign corporation under Section 2115(b) are Corporate Code section 408 which determines the consideration a corporation may accept in exchange for its shares and any section or chapter that would give a shareholder a right to call a shareholder meeting. <u>Id</u>

E. **Did Trek Have A Legal Right To Vote At The February 19, 2009 Special Meeting And To Sign The Bektayev Consents Even Though It Had Not Been A Turan Shareholder Of Record Since October Of 2007?**

The Bektayev Counter-Defendants cannot claim to represent the majority of Turan's shareholders unless they get to "count" approximately 24 million shares originally issued to Trek, but it is undisputed that Trek has not been a Turan shareholder of record since October 2007.

Bektayev never has obtained a judicial determination that the transfer of Trek's Turan shares was somehow fraudulent or improper, and these transactions were the subject of many of the claims that the Court previously dismissed with prejudice.  Mere allegations of fraud or impropriety are insufficient to allow a person to vote shares that are registered in the name of a third party and no such authority exists.

Turan contends that Trek could not vote shares it has not owed since 2007 in 2009.  It is a fundamental tenet of corporation law that only shareholders of record on the "record date" have a right to receive notice of meetings and to vote.  N.R.S. 78.350(2) (West 2010).

Conversely, a person who is not a shareholder on the applicable record date has no right to vote.  McLaney v. Fortune Operating Co., 84 Nev. 491, 496 (Nev. 1968); N.R.S. 78.350(2) (West 2009).

The Bektayev Counter-Defendants never set a record date for the any of the Bektayev Consents or the February 19th Meeting.

As such, the record date for the February 4, 2009 Consent was February 3, 2009 (the day before the consent was purportedly delivered), the record date for the February 19, 2009 Meeting was February 3, 2009 (the day before the meeting was noticed), the record date for the May 7, 2009 Consent was May 6, 2009 (the day before

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

the consent was purportedly delivered) and the record date for the July 2, 2009 Consent was July 1, 2009 (the day before the consent was purportedly delivered).

Since Trek was not a shareholder of record on any of the applicable record dates the Bektayev Counter-Defendants cannot rely on Trek's votes to legitimize its own election.

Without Trek's votes, the consents were signed by shareholders holding only 2,618,138 shares, far less than the majority of voting power required by law.

Likewise, quorum for the special shareholder meeting was dependent upon Trek's shares.

Again, without Trek's votes, only 2,618,138 shares were represented and the meeting lacked a quorum.

**F.**   **Can A Majority Of Turan Shareholders Call A Shareholder Meeting Under Nevada Law And Turan's Bylaws?**

The February 19, 2009 special shareholder meeting was convened "By order of the Majority Shareholders" of Turan.

It is Turan's position that the February 19, 2009, special shareholder meeting was not lawfully called because neither Nevada law nor Turan's Bylaws permit shareholders to call an annual or special meeting of the shareholders.

N.R.S. § 78.310 provides in pertinent part:  "Unless otherwise provided in the articles of incorporation or bylaws, **the entire board of directors, any two directors or the president** may call annual and special meetings of the stockholders and directors."

The language of NRS 78.310 is unambiguous:  unless a company's bylaws provide otherwise, only the directors or the president of a Nevada corporation can call a shareholder meeting.

Although no Nevada court has issued an opinion interpreting NRS § 78.310, other courts construing comparable statutes have held that shareholders have no independent right to call a special or annual shareholder meeting.  See *e.g.*, Pennwalt Corp. v. Centaur

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   <u>Partners</u>, 710 F. Supp. 111, 117 (E.D.P.A. 1989); <u>Eklund v. Pinkey</u>, 31 A.D.3d 908, 910

2   (N.Y. App. 2006); <u>see</u> <u>also</u>, 5 William Meade Fletcher, FLETCHER CYCLOPEDIA OF THE

3   LAW OF CORPORATIONS § 1997 (2010) ("A call for a special meeting must strictly comply

4   with the applicable statute and bylaws.  In the absence of a provision in a statute or

5   bylaws permitting it, a majority shareholder cannot call a shareholders meeting….")

6       Notably, the Bylaws of Turan in effect at the time the special shareholder meeting

7   was called expressly address who is entitled to call a shareholder meeting.

8       Specifically, Article I, Section 6.3 of the Bylaws provides in pertinent part:

9   "Annual meetings and special meetings may be called by the directors or by any officer

10  instructed by the directors to call a meeting."

11      Turan's Bylaws are clear and unequivocal; shareholders do not have a right to call

12  special or annual shareholder meetings.

13      Where the bylaws of a corporation provide a specific method by which a

14  shareholder meeting may be called, a meeting that is called by any other method is

15  invalid.  <u>Josephson v. Cosmocolor Corp.</u>, 64 A.2d 35, 36 (Del.Ch. 1949).

16  **G.    Was The Notice Of Special Shareholder Meeting Signed By A Person**

17  **Who Was Empowered To Execute It?**

18      The February 4, 2009, *Notice of Special Meeting of Shareholders Convened by*

19  *Majority Shareholders,* which purported to call a special meeting of Turan shareholders

20  in Almaty, Kazakhstan on February 19, 2009, was signed by "Ahandos Utebayev", in his

21  capacity as "Secretary of the Meeting."  Mr. Utebayev was not and has never been an

22  officer or director of Turan.

23      It is the position of Turan that the February 19, 2009 special meeting was invalid

24  because the meeting notice was not signed by a person empowered to execute it.

25  Section 78.370 of the Nevada Corporate Code provides in pertinent part:  "If under the

26  provisions of this chapter stockholders are required or authorized to take any action at a

27  meeting, **the notice of the meeting must be in writing and signed by the president or**

28

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**a vice president, or the secretary or an assistant secretary,** or by such other natural person or persons as the bylaws may prescribe or permit or the directors may designate." NRS § 78.380 (West 2010)(emphasis added).

Article 1, Section 6.4 of Turan's Bylaws provides in pertinent part: "Notice of all meetings shall be in writing and signed by the President, Vice-President, or the Secretary or Assistant Secretary or by such other persons or persons as the directors may designate.

Thus, both Nevada law and Turan's Bylaws expressly require that a notice of a shareholder meeting be signed by an officer of the company or a person duly designated by the board of directors.

Mr. Utabayev was not an officer of the company at the time he signed the Special Meeting Notice nor was he designated by Turan's board of directors to sign the notice.

Rather, he was "duly authorized by the majority shareholders" to act as secretary of the special shareholder meeting.

Therefore, because Mr. Utabayev was appointed by the purported majority of shareholders, and not Turan's board of directors, he did not have authority to sign the meeting notice and it is defective.


Dated: April 7, 2010                    LAW OFFICE OF RICK AUGUSTINI


                                        By:    /s/
                                               _____
                                               Rick Augustini
                                               Attorney for Interpleader Counter-Defendant
                                               TURAN PETROLEUM, INC.

COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## <u>NOTICE OF ELECTRONIC FILING</u>

I am employed in the County of Orange, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 620 Newport Center Drive, Suite 1100, Newport Beach, CA 92660. On April 7, 2010, I filed the foregoing document(s) electronically in accordance with the CM/ECF Rules: **COUNTER-DEFENDANT TURAN PETROLEUM, INC.'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** Executed on April 7, 2010 at Newport Beach, California.

/s/

_____

Rick Augustini