Case 8:09-cv-00059-JVS-MLG   Document 447-7   Filed 04/02/12   Page 1 of 5   Page ID #:10257

## STOCK OPTION AGREEMENT, Turan Petroleum, Inc.

| | |
|---|---|
| **Grantee:** | ASIA PACIFIC OIL & GAS LTD |
| **Number of Shares of Company Common Stock Underlying Option:** | 10,000,000 [TEN MILLION] OPTIONS TO COMMON SHARE |
| **Total Price:** | $0.25 PER SHARE |
| **Date of Grant:** | JANUARY 7, 2009 |

This Stock Option Agreement is entered into as of the 7st day of JANUARY, 2009 by and between Turan Petroleum, Inc., a Nevada Corporation, currently having its executive office at 940 South Coast Dr. Suite 100, Costa Mesa, CA 92626 (the "Company"), and ASIA PACIFIC OIL & GAS LTD (the "Grantee").

This Stock Option Award by Turan Petroleum Inc is a part fulfillment according to the section 5.1 of prior agreement dated January 7, 2009 between Asia Pacific Oil & Gas Ltd, and Turan Petroleum Inc regarding 20% stake in Turan EnerPetroleum LLP.

**RECITAL**

WHEREAS, the Company desires that Grantee shall provide consulting services to the Company and has determined that in order to reward the consultant for past efforts and to encourage the Consultant to perform additional services, the Company will grant to the Grantee an option to purchase shares of common stock of the Company.

1. **STOCK OPTION**

    1.1. **GRANT OF STOCK OPTION.** The Company hereby grants to Grantee, and Grantee hereby accepts, the right and option to purchase from the Company all or any part of the Number of Shares of Company Common Stock Underlying Options set forth above (the "Shares") at the Purchase Price Per Share set forth above on the terms and conditions stated herein (the "Option"). The Option granted hereunder is issued as a non-qualified option and is not intended to be an "Incentive Stock Option," as defined in Section 422 of the Internal Revenue Code of 1986, as amended (the "Code"), and is not issued under and Company stock option plan. Grantee expressly acknowledges that the Option may create certain tax liabilities upon exercise and in certain other events.

EXHIBIT 6

1.2. **TERMS OF STOCK OPTION.** The Option shall be subject to the following terms and conditions:
   (a) Option Period. The Option shall not be exercisable after 5:00 p.m., Los Angeles time, on **JANUARY 6TH 2010**   (the "Expiration Date"). The Option or portion thereof may be exercised only with respect to whole shares of common stock, par value $0.001 per share of the Company (the "Common Stock"). Notwithstanding Section 1.3 hereof or the provisions of any Agreement, the Board of Directors of the Company (the "Board") may in its sole and absolute discretion extend the time for the exercise of the Option.
   (b) Vesting. Subject to the limits set forth herein relating to the termination of the Grantee's directorship by the Company, this Option shall be deemed vested and thus exercisable by Grantee only to the extent of the following number of Shares commencing on the following dates:

| Numbers of Shares | First Date After Which Shares May Be Purchased |
| --- | --- |
| ALL | JANUARY 7TH 2009 |

   (c) Method of Exercise. The Option may be exercised (i) by giving written notice to the Company specifying the number of whole shares of Common Stock to be purchased and accompanied by payment thereof in full (or arrangements made for such payment to the Company's satisfaction) in cash, and (ii) by executing such documents as the Company may reasonably request. No certificate representing Common Stock shall be delivered until the full purchase price therefore has been paid (or arrangement made for such payment to the Company's satisfaction).

   (d) The total number of options will be up to 5% of the total outstanding shares of the company for a period of 12 months from the date of this agreement.

1.3 **TERMINATION OF CONSULTANCY**
   (a) Total Disability. If Grantee's consultancy with the Company terminates by reason of Total Disability, the Option shall be exercisable only to the extent that such option is exercisable on the effective date of Grantee's termination of consultancy and may thereafter be exercised by Grantee (or Grantee's legal representative or similar person) until and including the Expiration Date. "Total Disability" shall mean the inability of Grantee substantially to perform Grantee's duties and responsibilities as a consultant for a continuous period of of six months,
   (b) Death. If Grantee's consultancy with the Company terminates by reason of death, the Option shall be exercisable only to the extent that the Option is exercisable on the date of Grantee's death and may thereafter be exercised by Grantee's executor, administrator, legal representative, beneficiary or similar person until and including the Expiration Date.
   (c) Other Termination. If Grantee's consultancy with the Company is terminated by the Grantee or the Company for any reason other than Total Disability or death, the Option shall be exercisable only to the extent that the Option is exercisable on the effective date of the







TURAN   APOG

Grantee's termination of consultancy and may thereafter be exercised by Grantee (or Grantee's legal representative or similar person) until and including the Expiration Date.

2. **TRANSFERABILITY**

   2.1 **NON-TRANFERABILITY.** The Option may not be given, granted, sold, exchanged, pledged, assigned, hypothecated or otherwise encumbered or disposed of by Grantee, other than by will or the laws of descent and distribution or pursuant to beneficiary designation procedures set forth in Section 2.2. Upon any attempt to so sell, transfer, assign, pledge, hypothecate, encumber or otherwise dispose of the Option hereunder, the Option and all rights thereunder shall immediately become null and void. Except to the extent permitted by the foregoing sentence, the Option may be exercised during Grantee's lifetime only by Grantee or Grantee's legal representative or similar person. The Company retains the right to allow the Grantee to transfer all or part of the Option to another party (the "Transferee") approved by the Company in a writing to the Grantee and the Transferee, in which case the Transferee shall assume all the rights and obligations of the Grantee.

   2.2 **DESINGATION OF BENEFICIARY.**
   (a) Grantee may file with the Company a written designation of one or more persons as Grantee's beneficiary or beneficiaries (both primary and contingent) in the event of Grantee's death. To the extent an outstanding option granted hereunder is exercisable, such beneficiary or beneficiaries shall be entitled to exercise such option.
   (b) Each beneficiary designation shall become effective only when filed in writing with the Company during Grantee's lifetime on a form prescribed by the Company. The spouse of a married Grantee domiciled in a community property jurisdiction shall join in any designation of a beneficiary other than such spouse. The filing with the Company of a new beneficiary designation shall cancel all previously filed beneficiary designations.
   (c) If a Grantee fails to designate a beneficiary, or if all designated beneficiaries of a Grantee predecease Grantee, then each outstanding option hereunder held by such Grantee, to the extent exercisable, may be exercised by such Grantee's executor, administrator, legal representative or similar person.

3. **SALE OR DISPOSITION OF SHARES**

   3.1 **RESTRICTIONS ON SHARES.** The Option shall be subject to the requirements that if at any time the Company determines that the listing, registration or qualification of the shares of Common Stock subject to the Option upon any securities exchange or under any law, or the consent or approval of any governmental body, or the taking of any other action is necessary or desirable as a condition of, or in connection with, the delivery of shares thereunder, such shares shall not be delivered unless such listing, registration, qualification, consent, approval or other action shall have been effected or obtained, free of any conditions not acceptable to the Company. The Company may require that certificates evidencing shares of Common Stock delivered pursuant to the Option bear a legend indicating that the sale, transfer or other disposition thereof by the holder is prohibited except in compliance with the Securities Act of 1933, as amended, and the rules and regulations thereunder.

TURAN  APOG

EXHIBIT 6

## 4. ADJUSTMENTS

**4.1 ADJUSTMENT.** In the event of any stock split, stock dividend, recapitalization, reorganization, merger, consolidation, combination, exchange of shares, liquidation, spin-off or other similar change in capitalization or event, or any distribution to holders of Common Stock other than a regular cash dividend, the number and class of securities subject to the Option and the purchase price per security shall be appropriately adjusted by the Company, without an increase in the aggregate purchase price. The decision of the Company regarding any such adjustment shall be final and binding.

## 5. EFFECT OF CERTAIN TRANSACTIONS

**5.1 REORGANIZATION; MERGER; SALE OF ASSETS.** In the event that the Company enters into an agreement

(a) to dispose of all or substantially all of its assets, in contemplation of the distribution of the net proceeds of such sale to the Company's shareholders, or
(b) to consummate a merger or consolidation in which the Company is not the surviving or resulting corporation, or in the event the persons who, as of the date hereof, hold 70% or more of the outstanding capital stock of the Company enter into an agreement to sell all of such stock (such distribution, merger, consolidation or sale being hereinafter referred to as a "Transaction"), then the Company shall provide, at its election made in its sole and absolute discretion, for one or more of the following: (i) for the Option, whether or not then exercisable, to be replaced with a comparable option to purchase shares of capital stock of a successor or purchasing corporation or parent thereof, or (ii) for the Option, whether or not then exercisable, to be assumed by a successor or purchasing corporation or parent thereof (and, in the event of such assumption, the Option shall continue to be exercisable, on the terms and subject to the conditions set forth herein, and in cumulative amounts at the times provided herein, but shall, from and after the consummation of such Transaction, be exercisable for the capital stock, cash and/or other property received by the common stockholders of the Company in such Transaction in an amount equal to what the holder of the Option would have received had he exercised the Option immediately prior to the consummation of such Transaction), or (iii) for the Option, whether or not then exercisable, to become exercisable during such period prior to the scheduled consummation of such Transaction as may be specified by the Company. In the event the Company elects to cause the portion of the Option not then exercisable to become exercisable prior to such Transaction (such portion the "Accelerated Portion"), any exercise of the Accelerated Portion shall be conditioned upon, and shall be effective only concurrently with, the consummation of such Transaction; and if such Transaction is not consummated, the exercise of the Accelerated Portion shall be of no further force or effect (and Grantee may elect, with respect to the exercise during such period of the Option that was otherwise exercisable, to so condition such exercise upon the consummation of the Transaction). If the Option or Accelerated Portion is not exercised prior to the consummation of such Transaction (and which is not being assumed by a successor or purchasing corporation or parent thereof), the Option or Accelerated Portion shall terminate and be of no further force or effect as of consummation of such Transaction,

Page 4 of 5 Turan Petroleum Stock Option Agreement -- Rev: 3/24/08          TURAN    APOG



EXHIBIT 6

**5.2 POOLING TRANSACTIONS.** If Grantee is subject to Section 16 of the Exchange Act (i) notwithstanding the exercise periods set forth in Sections 1.2 and 1.3, and (ii) notwithstanding the Expiration Date, in the event the Company is involved in a business combination that is intended to be treated as a pooling of interests for financial accounting purposes (a "Pooling Transaction") or pursuant to which Grantee receives a substitute option to purchase securities of any entity, including an entity directly or indirectly acquiring the Company, then the Option (or option in substitution thereof) shall be exercisable to the extent set forth herein until and including the latest of (x) the date set forth pursuant to the then applicable paragraph of Section 1.2, 1.3 or the Expiration Date, (y) the date which is six months and one day after the consummation of such business combination and (z) the date which is ten business days after the date of expiration of any period during which Grantee may not dispose of a security issued in the Pooling Transaction in order for the Pooling Transaction to be accounted for as a pooling of interests.

## 6. MISCELLANEOUS

**6.1 NO RIGHT OF EMPLOYMENT.** The Option granted hereunder shall not confer upon Grantee any right to continued employment by the Company, any Subsidiary or any affiliate of the Company or affect in any manner the right of the Company, and Subsidiary or any affiliate of the Company to terminate the consultancy of Grantee at any time without liability hereunder.

**6.2 RIGHTS AS A STOCKHOLDER.** Grantee shall not have any rights as a stockholder of the Company with respect to any shares of Common Stock which are subject to the Option until Grantee becomes a stockholder of record with respect to such shares of Common Stock.

**6.3 GOVERNING LAW.** This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada.

IN WITNESS WHEREOF, the Company and Grantee have executed this Agreement as of the date set forth above.

TURAN PETROLEUM, INC.

By: _____
Naum Voloshin, COO
TURAN PETROLEUM INC.

940 SOUTH COAST DR. STE 100
COSTA MESA, CA 92626

**GRANTEE:**

95 Wilton Road, Suite 3, London,
SW1V 1BZ, United Kingdom
Tel: +44 (0) 845 527 8554
Fax: +44 (0) 020 527 4259

ASIA PACIFIC OIL & GAS LTD

[Seal: Asia Pacific Oil & Gas Ltd, 50476, Seychelles]

Page 5 of 5 Turan Petroleum Stock Option Agreement – Rev: 3/24/08

TURAN   APOG

EXHIBIT 6